## Alice L. Curry, Plaintiff-Appellant, v. Max Klotz, Defendant-Appellee.

### Gen. No. 47,760.

First District, Third Division.

March 23, 1960.

Wence F. Cerne and Robert M. White, of Chicago, for plaintiff-appellant.

Wyatt Jacobs, of Jacobs, Miller, Rooney, and Lederleitner, of Chicago (Joseph B. Lederleitner and Neil K. Quinn, of counsel) for defendant-appellee.

JUSTICE BURKE delivered the opinion of the court.

On Saturday, August 11, 1956, at about 5:30 P. M., Alice L. Curry, a nurse, was riding on the front seat of a Chevrolet automobile being driven in an easterly direction on Foster Avenue in Chicago by John McMillan in "exceedingly heavy" traffic. It had been raining but was not raining at the time. The cars in the heavy traffic were proceeding in an easterly direction along the wet pavement close to each other at about 20 to 30 miles per hour. In the middle of the second block east of Western Avenue a Volkswagen suddenly stopped. Immediately thereafter three other

cars driven respectively by Air Force Sergeant Wilbur A. Jackson, John McMillan and Max Klotz, following in line, came in contact. The car in which Alice Curry was riding was the third car involved in the mishap and the car driven by Klotz was the fourth car. Mrs. Curry sued Klotz to recover damages for personal injuries purportedly sustained by her while riding in the McMillan car which was struck from the rear by the automobile driven by the defendant. Various acts of negligence are averred. A trial resulted in a verdict of not guilty. Plaintiff's post-trial motion for a new trial was denied. She appeals from the judgment entered on the verdict.

The first point advanced by the plaintiff is that the verdict is against the manifest weight of the evidence, and that she should be awarded a new trial. Defendant states that the weight of the evidence overwhelmingly supports the verdict. The testimony favorable to the plaintiff established that when the car in front of her, driven by Sergeant Jackson, stopped, the McMillan car in which she was riding stopped several feet behind the Jackson car; that "a moment after, the stopped" McMillan car was hit from the rear; that plaintiff whipped around inside the automobile, her head was pitched back and she was thrown forward and back again; that she knew of only one impact and did not know whether the McMillan car struck the car in front. Before the collision plaintiff had been in excellent health. Immediately after the impact she had pain in her neck and right arm and a headache. She had great difficulty in moving but got out of the car. She received medical care about 1½ hours after the collision and was under regular medical care from that time on. She was treated with physiotherapy, traction, medication and wore a cervical collar for six months, when it wore out. A second cervical

collar was worn intermittently to the time of the trial. She was hospitalized twice, once for 10 days and once for 28 days. She missed work from time to time and was having pain in her neck, shoulders and arm. Her symptoms persisted to the time of the trial.

There was testimony that the trunk lid of the McMillan automobile was pushed in, the rear bumper bars bent, the right fender and front bumper damaged, and that a month after the occurrence he noticed a circular dent in the dashboard. The repairs to the McMillan car cost $170. The circumstances confronting the driver of the first car, the Volkswagen, are not disclosed by the record. Sergeant Jackson, the driver of the second car, testified that as he was proceeding along in the heavy traffic at about 20 to 30 miles an hour the Volkswagen suddenly stopped in front of him, he applied his brakes but his car slid on the wet pavement into the back of the Volkswagen. He was then involved in another occurrence. He said the third car, driven by McMillan, plaintiff's companion, followed closely the Jackson car at about 20 to 30 miles an hour; that the Jackson car made an abrupt emergency stop; that the McMillan car also attempted an emergency stop and crashed into the rear of the Jackson car, pushing it into the rear of the Volkswagen. Jackson characterized this impact as a medium collision. Plaintiff did not know that the car in which she was riding struck the car ahead. The fourth car, a Buick driven by the defendant, was proceeding easterly at about 15 miles an hour about one car length behind the car ahead of him. As he was looking forward he saw the car ahead suddenly stop. He put on his brakes, moved about 10 feet and skidded, barely touching the car ahead. Defendant's wife was seated alongside of him and an elderly lady friend was seated in the rear. None of the occupants of

defendant's car was injured, nor was any of them thrown off his or her seat. McMillan said that the contact with the Jackson car raised him up over the steering wheel, that plaintiff went forward also but not to the extent of leaving the seat. McMillan was not injured.

The plaintiff relies strongly on an admission against interest by the defendant. When called to testify under Section 60 of the Practice Act in response to the inquiry: "And, as a matter of fact, didn't you tell him that the fault was entirely yours, and that you would pay for all the damage which he sustained?" defendant answered: "I certainly did." In response to the inquiry: "You told him that?" he answered: "Yes." After testifying that he just barely touched the car in front he said he got out of his car, the driver from the other car "came in back there and like gentlemen, I gave him my name and address, he gave me his name and address. I told him there was a slight, little damage to the fender, I think I can take care of it for you, and went to go away into the cars in front." In answer to a question as to whether, as a matter of fact, he did pay for the damages, he answered in the affirmative. To the question: "You did pay for it?" he answered "I don't know. He never came to me and asked for the money. I suppose it was paid." When the twofold question was separated and propounded as two questions on interrogation by his lawyer the defendant testified that after the occurrence in a conversation with the driver of the car in front he agreed to pay for whatever damage he had on his fender. To the further question propounded by his attorney: "Did you say anything to him about whose fault it was?" he answered, "No."

■ Three instructions were given to the jury informing them of the law as to the factors to be con-

269

sidered in ascribing weight and credence to the testimony of the witnesses. The court refused a tendered instruction by the defendant that a person who is suddenly and unexpectedly confronted with peril arising from either the presence or appearance of imminent danger to others is not expected nor required to use the same judgment and prudence required of him in the exercise of ordinary care in calmer and more deliberate moments. The drivers of the second and fourth cars refute plaintiff's version of the occurrence. The admission against interest by the defendant was received in evidence and considered by the jury. From defendant's testimony it appears that he thought the money for the damage to the fender was paid. Defendant denied any responsibility for the occurrence or for making any statement that he admitted such responsibility. The jury had a right to consider the admission against interest and the denial of liability and guilt, and to decide whether the admission of fault and the offer to pay for the repairs stemmed from motives other than an awareness or an opinion of guilt. At the time of defendant's statement against interest he was not aware of any claim by the plaintiff that she had been injured. According to the testimony introduced in his behalf the plaintiff remained seated in the car. A reasonable person does not admit and deny liability in the same breath. The alleged inconsistencies in the testimony for the plaintiff and the defendant were properly submitted to the jury. There was a sharp conflict in the testimony which the jury resolved in favor of the defendant. There is strong support in the record for the verdict of the jury. We find that the judgment is not against the manifest weight of the evidence.

 The second criticism leveled at the judgment is that the court erred in permitting the defendant

to ask Dr. Wesley Gustafson to answer a question which was improper in form and elicited an opinion on an ultimate issue in the case, citing Kimbrough v. Chicago City Ry. Co., 272 Ill. 71, and other cases. The proper method of asking questions of expert witnesses is to state hypothetically the case which counsel thinks has been proven and ask a question upon such hypothetical case, and not to ask the question in the form of a recitation of actual facts. In interrogating the medical witnesses called by the plaintiff her attorney propounded questions which included references to nonhypothetical facts of the case at bar. The defendant's question put to his medical expert commenced and continued in hypothetical form until he incorporated the nonhypothetical facts of the plaintiff's hypothesis and therefore contained identical references. The expert opinion elicited by the defendant followed the wording of the question propounded by the plaintiff to her medical experts. A party cannot complain of the form of questions asked witnesses of the adverse party when the questions asked his own witnesses were of the same nature. Spears v. Atchison T. & S. F. Ry. Co., 255 F.2d 780, 784; Netcher v. Bernstein, 110 Ill. App. 484; Borrett v. Petry, 148 Ill. App. 622, 627; Shannon v. Potts, 117 Ill. App. 80, 82.

For the reasons stated the judgment is affirmed.

Judgment affirmed.

BRYANT, P. J. and FRIEND, J., concur.