ADRIAN F. GORDON *vs.* MARY B. CUMMINGS & another.

Suffolk.    November 11, 1890. — November 26, 1890.

Present: FIELD, C. J., DEVENS, W. ALLEN, HOLMES, & MORTON, JJ.

*Personal Injuries — Unguarded Elevator Well near Street —
Negligence — Due Care.*

The various stories of a building on a city street, partly let and partly occupied by the owner for workshops, were reached by a common entry, communicating with the street by a door and steps. This entry contained on the first floor several letter boxes placed there by the tenants for the accommodation of the letter carrier upon that route. This carrier, in attempting to enter the building by

the steps and door to deposit a letter for a tenant in his box, was injured by a defect upon the premises. *Held*, in an action against the owner to recover for such injuries, that the jury would be justified in finding that the carrier entered the building by the implied authority or invitation of the owner.

A freight elevator well in a building, partly let and partly occupied by the owner for manufacturing purposes, communicated directly with the street by an opening provided with a sliding door and with a chain to guard it. Separated from this opening by a granite post a foot wide was an open doorway of about the same size and construction, and on the same level from the street, which led by means of a few steps and an inner door to the common entry of the building. The owner who operated the elevator and permitted the tenants to use it during the day employed a night watchman, whose duty it was to close the elevator opening at six o'clock. In the entry were letter boxes placed there by the various tenants for the accommodation of the letter carrier upon that route. This carrier on a dark evening, after the watchman had arrived, attempted to enter the building to deposit a letter for a tenant in his box. The place was dimly lighted, and as he felt his way along he stepped into the elevator opening, which was not closed or protected by the chain, and fell and was injured. *Held*, in an action against the owner for such injuries, that the jury might properly find negligence on the part of the owner and due care on the part of the carrier.

Devens, J. This is an action of tort for personal injuries occasioned to the plaintiff by falling into an unguarded elevator well on Albany Street in Boston. In order that the plaintiff might maintain his action, in which he relied solely on the common law counts of his declaration, it was necessary for him to offer evidence which would justify the jury in finding that he entered, or attempted to enter, upon the defendants' premises by some invitation or authority from them; that he was injured in so doing by some want of care, for which they were responsible, in the construction or the management of the approach to the entrance he was authorized to use, by means of which neglect he was injured; and that he was himself in the exercise of due care. It is not necessary to decide that, upon the evidence offered, the jury should have found in the plaintiff's favor on these three propositions. If it was sufficient, if believed, to authorize them so to do, the case should have been submitted to them.

The plaintiff was a United States letter carrier; the place which he sought to enter was known as number 619 Albany Street. It was always open, having no door to close it. Ascending from its threshold, which itself constituted the first step, was a flight of four or five steps, to a door which opened upon an entry or hallway in which were three or four boxes, placed there

for the accommodation of the plaintiff by the tenants of the defendants, who occupied the various stories of the building, for the reception of their mail matter. Among the rest was a box for that purpose for the mail matter of Mellish, Byfield, & Co., who were tenants at will of the third and fourth floors of the building of the defendants, and for whom the plaintiff had a letter which he was seeking to deliver by placing it in their box. The hallway into which the plaintiff sought to enter had a flight of stairs which led to the next story. The defendants owned the building, and there was nothing which tended to show that this hallway was leased, or that they did not have the entire management of it. A watchman also employed by them had the general charge of the building during the night, taking control of it from six in the evening until six in the morning. How long these letter boxes had been in the entry, or how often the plaintiff had visited them in the discharge of his duty as a letter carrier, does not fully appear by the report, but their existence in so public a place, which was, so far as appears, entirely in the control of the defendants, could not have been without their knowledge, and, whatever the rights of the tenants or their servants may have been in the entry, afforded some evidence that the boxes were there by the defendants' authority and permission, and that the letter carrier in visiting them in the performance of his duty came there by the implied invitation of the defendants for the convenience of their tenants, or at least that he was authorized to believe that he came there by such an invitation. While the building was intended for workshops, and while there were no offices in it, it was still one where, to some extent at least, the tenants received letters, and there was a preparation and adaptation of the entry, or hallway, for the plaintiff's use which might well lead him to believe that he could safely enter in the performance of his duty. *Sweeny* v. *Old Colony & Newport Railroad*, 10 Allen, 368. *Larue* v. *Farren Hotel Co.* 116 Mass. 67. *Parker* v. *Barnard*, 135 Mass. 116. *Learoyd* v. *Godfrey*, 138 Mass. 315.

If the plaintiff was authorized and induced to enter this hallway, there was also evidence of a want of due care in the management of the elevator well down which the plaintiff fell. It opened directly upon the street, about twenty inches back from the line of the street, by a doorway framed in granite, its thresh-

old being some eight inches higher than the flagging of the street. Separated from this elevator doorway by a stone post one foot wide was the entrance, of about the same dimensions and construction, which led up to the hallway of which we have already spoken. Its threshold was at the same height as that of the elevator entrance, and was a continuation of it, but not quite so wide. The elevator entrance was provided with an up and down sliding door, which when down closed the entrance, and with a chain, which when hooked hung loosely across it. On the evening when the accident occurred the elevator doorway was open and the chain unhooked. It was quite dark, about half past six o'clock, in January, and the night was foggy. There was no light on the outside of the building, although there was a gas light at a distance of about sixty feet, and an electric light at a distance of a hundred and twenty feet. The sidewalk in front of the building did not extend in front either of the elevator entrance or of the entrance to number 619, the intervening space being flagged even with the street so that teams could back up to both these entrances. Upon this state of facts, there was evidence of a want of due care in leaving the elevator entrance thus exposed, and the plaintiff's testimony tended to show that, while seeking to enter at number 619, he stepped into the elevator entrance and was precipitated down the well. He had a right to suppose that, when seeking to enter where he had a right to go, he would not be exposed to this danger, and that an entrance by its side, easily to be mistaken for it, would not be left open and unenclosed by any barrier at a time when it was not in use. Without any light directly upon it, with the door open directly upon the elevator well, with the chain unhooked, it might certainly be held by a jury that there was a carelessness in its management which would expose any one to serious danger who was lawfully approaching the entrance to the hallway. There was also evidence that for this condition of things the defendants were responsible. While their tenants had the authority to use this elevator, it was the defendants' duty to see that, while not in use, it was in a safe condition for those who were passing in the street or lawfully seeking access to their building. They furnished the power by which the elevator was run, although the tenants used it for freight purposes during the day. But the defendants' servant, the watchman,

was, in the language of the report, "supposed to shut the elevator at six o'clock at night." By this we understand that it was his duty so to do, and on the night of the accident he was at the building before the accident happened. It was thus apparently by the neglect of their own servant that the elevator entrance was in the exposed condition in which it was found. While the defendants permitted their tenants to use the elevator during the day, they had not let it to them nor relinquished to them the control of it. They had not let the whole of their building, but were themselves in occupation of the part that was not let, and, so far as appears, had full authority to make the well safe.

It is said by the defendants, that the opening into which the plaintiff fell was not on the premises let to Mellish, Byfield, & Co., and that there can be no liability on their part for an injury which did not arise from any defect either of the leased premises or of premises over which the tenants had the right of inviting customers, so that, even if they would be liable to the plaintiff for an injury if he had received it in the hallway by a defect existing there, they are not liable for an injury incurred by reason of negligence in the management of any opening not on the leased premises. This is to limit the liability of the defendants quite too narrowly. If the defendants had induced or invited through their tenants the plaintiff to enter at number 619 Albany Street, so far as the access thereto was under their own control, it was their duty to see that this access was not endangered by their negligence in the management of the other parts of their building, in order that a person rightfully seeking to enter should not be exposed to the liability of a fall into an opening so constructed that it might well be mistaken for the proper entrance. *Elliott v. Pray,* 10 Allen, 378, 385. *Larue v. Farren Hotel Co.* 116 Mass. 67. *Readman v. Conway,* 126 Mass. 374.

There remains the question whether the plaintiff offered any sufficient evidence of due care. He knew the character and description of the premises; he had passed them many times, and was aware that the two entrances were close to each other; but his previous knowledge of their dangerous proximity is not conclusive that he was not exercising due care in attempting to enter. *Looney v. McLean,* 129 Mass. 33. He described the care with which he moved, his feeling his way, his effort to

ascertain when he stepped upon the threshold that he was in the right entrance. To some extent he might suppose that at that hour either the chain would be across or the door closed at the elevator entrance, and putting his knee and hand forward discovered neither. The character of his conduct, depending upon this and other circumstances, is such that it is not possible to say, as matter of law, that, viewed in the light of common knowledge or experience, he was lacking in due care. *Wheelock* v. *Boston & Albany Railroad*, 105 Mass. 203.

We are therefore of opinion, that the learned judge who presided was in error in withdrawing the case from the jury, and that the questions of fact involved should have been submitted to their experience and judgment.

*Case to stand for trial.*

*J. D. Long*, for the plaintiff.
*W. A. Gaston*, for the defendants.