HENRY W. ROETTCHER v. EARLE R. PASSEL, ADMINIS-TRATOR, ETC.

1. To charge a landlord for injuries to the public resulting from a nuisance on leased premises, the nuisance must necessarily result from the ordinary use of the premises by the tenant. Where injuries result wholly from improper or negligent use of the leased premises by the tenant, he alone is chargeable.
2. Where premises are leased in parts to various tenants and the nuisance is in respect of parts—such as hallways, etc.—reserved for the common use of tenants and the public, the landlord is responsible both to tenants and the public for injuries due to defective construction and maintenance.
3. A coal hoal or chute in a sidewalk adjacent to premises leased to various tenants and used in common by some or all, is to be maintained in proper condition by the owner; and he will be liable for injuries flowing from negligence in respect of such maintenance—more especially if the injurious results are due to defects in construction, such as a failure to provide proper safeguards, or such as render possible a dangerous displacement that would not be readily observable by those using the sidewalk.
4. In view of common knowledge and advance in the mechanical arts, there is no excuse for slip-shod construction in such

matters, considering the danger to life or limb likely to result from carelessness in this regard, and it is the primary duty of public officers having jurisdiction over these matters to see that public safety is at all times conserved.

HOSEA, J.; FERRIS and MURPHY, JJ., concur.

The action below was by the administrator of the deceased against the owner of the premises, for death through negligence in maintaining a "coal-hole" in a sidewalk. The petition alleges ownership and occupancy and avers the duty of defendant below, as the owner, to keep said opening safe and secure to prevent injury to those using the sidewalk. The negligence alleged is that defendant below permitted said opening "to remain insecure and unsafe" without guard or warning to pedestrians, and that the decedent while lawfully passing on said sidewalk stepped upon the iron grating covering said opening, and, the same not being secure, turned and slipped from its place and precipitated the decedent into said opening, causing injuries from which death ensued.

The defendant below takes issue by answer only upon the alleged insecurity of the opening, the injuries to decedent, and his own occupancy or control of the premises; and for a second defense avers negligence of decedent as the cause of any injuries suffered.

The reply of plaintiff below formally accepts the issues thus tendered.

The cause being tried to a jury resulted in a verdict and judgment for plaintiff below—defendant in error here —and the present proceeding is brought to reverse the judgment and for a new trial.

Various errors are complained of—some relating to the admission of evidence and others going to the views of the trial court as to the law governing the case, as exemplified in the charges, special and general; but they depend chiefly upon the question of the legal liability of the landlord, who, as shown by the testimony, did not reside upon or physically occupy the premises.

In reviewing the action of the trial court, it is apparent that the court was called upon, under the issues presented both in pleading and testimony, to determine, as matter of law, whether the landlord could, under the proofs, be held at all, since this was a condition precedent to the submission of the question of negligence to the jury. To this fundamental question, therefore, we first direct our attention.

The conditions under which an owner of abutting premises in liable for injuries of the nature here in controversy, are partially defined in *Schindelbeck* v. *Moon*, 32 O. S., 264, and *Langabaugh* v. *Anderson*, 68 O. St., 131. In the latter case the court cites a summing up of the conditions fixing the liability of the landlord, from Wood on Landlord and Tenant (Sec. 536), as follows:

"The rule may be stated as a result of the authorities to be that, in order to charge the landlord, the nuisance must *necessarily* result from the ordinary use of the premises by the tenant, or for the purposes for which they were let; and where the ill results flow from the improper or negligent use of the premises by the tenant, or, in other words, where the use of the premises may or may not become a nuisance, according as the tenant exercises reasonable care, or uses the premises negligently, the tenant alone is chargeable for the damages arising therefrom."

This general statement of a general rule must be understood, as will appear from the authorities, as applying to an entire surrender of possession and control of the property. (Sherman and Redfield, 708.)

In the case at bar the undisputed proof shows a piecemeal renting to various tenants; that is to say, the third floor to one family, the second floor to a second, the back rooms on the first floor to a third (with halls and stairways in common), and the store room in front to defendant's son The coal hole in question was one of two, both opening into a common cellar—two of the tenants having the use of one and two of the other. The son collected the rents in the absence of defendant and testified that he "had occasion

for five years to look after things on account of family interest"; but that there was "no occasion for repairs." The third floor tenant (a witness for defendant), testified that by request of defendant, Roettcher, he had agreed to look after the coal chute in question and keep it closed and in repair. "Of course," he says, "repairs on the outside—I don't suppose he expected any one to do that" (evidently meaning that it was not expected of the tenants). "This arrangement," he says, "was made when I rented. He asked me to watch it and see that it was closed, as he could not be there all the time, and I agreed."

It is clear from this testimony that the defendant did not surrender the entire possession, but only parts of his premises. It is not stated whether the building covers the entire lot, but the tenants rent and occupy only certain rooms, with privilege of using for convenience of access, etc., other parts in common. The case does not, as we think, fall within the Ohio rule above cited, because there is no complete surrender of possession—there is a mere rental of lodgings, with control and responsibility remaining with the owner to take care of demised parts.

The courts have treated the responsibility for maintaining a safe pavement structure, such as a coal chute, as in the nature of a covenant running with the land; and so long, therefore, as a shred of possession remains in the landlord, the initial duty of safe maintenance arising out of a structure in derogation of the public right in the adjacent highway remains incumbent upon him. *Trustees* v. *Foster*, 156 N. Y., 354.

The governing rule, briefly stated, is that where portions only of a building are let, the owner continues responsible for the condition of the remainder, both as to tenants and the public. Sh. & Redfield on Neg., par. 710; *Redman* v. *Conway*, 126 Mass., 374; *Gordon* v. *Cummings*, 152 Mass., 513; *Marwedell* v. *Cook*, 154 Mass., 735; *Miller* v. *Hancock*, 2 Q. B. D., 177; *Hilsenbeck* v. *Guhong*, 131 N. Y., 674; *Sawyer* v. *McGillionddy*, 81 Me., 318; *Canandaigua* v. *Foster*, 156 N. Y., 354.

The discussion of the question in *Miller* v. *Hancock,* (1893), *supra,* by Esher, M. R., and Bowen, L. J., is particularly clear in demonstrating that the common use of hallways, etc., by tenants for access or convenience is not a letting, but a mere easement which implies no giving up of possession by the landlord. *Canandaigua* v. *Foster* (1898), *supra,* is also an instructive deliverance, by the New York Court of Appeals, upon the same subject. The opinion declares, in part, that:

"The implied duty assumed where the hole was cut and the grate placed over it requires reasonable precaution on the part of the owner to protect the public so long as he remains the owner and is in possession of any part of the building on the abutting land. * * * Nor can he relieve himself of the duty without parting with the entire possession of the property benefited, for the safety of the public requires that the owner, so long as he is in possession of any part of the property, should be compelled to keep his structure in the sidewalk in suitable condition for use as part of the sidewalk. * * * A person injured by a defective grate should not be subject to the hazard of ascertaining the precise relations existing between the owner and one of his tenants with reference to the control of the grate, but a simple rule, resting upon ownership and possession in whole or in part, of the adjacent structure, is required by a sound public policy."

We can not doubt the correctness of the principle thus decided. Were it not so, a landlord would have it in his power to fritter away by unlimited subdivision that responsibility which as matter of sound public policy should exist somewhere in definite tangible form for the benefit of those unfortunate enough to be made the victims of the parsimony or carelessness of those for whose benefit the structure is maintained. In the case at bar, moreover, the defendant recognized his continuing responsibility for the care of the chute in question by appointing one of the tenants his agent to look after it and see that it was kept closed "because he could not be there all the time."

There being no conflict in the testimony on this point, there can be no question as matter of law upon the evidence, that the defendant, as the owner of the property, was the proper party to sue. The trial court took this view and gave to the jury in its charges the following, which are the subject of strenuous objection:

In special charge No. 4, the jury are instructed that:

"In the case before you the defendant, Henry Roettcher, is the person upon whom devolved the duty of exercising ordinary care in seeing that the coal hole or scuttle with its lid was kept reasonably safe as any other part of the street."

Again in the general charge it is said:

"It was denied that defendant had control of said cellar, *but under the evidence as it was adduced, in law the defendant was in control of said coal cellar and covering,* and had the duty of caring for and keeping said covering and coal chute in reasonably safe repair and condition."

We think the trial court was entirely correct in the view of the law set forth in these instructions. The allegation of the petition as to ownership and occupancy is fully supported by the answer admitting ownership and by the proofs showing a constructive occupancy or right of entry to undemised portions of the building, as to which tenants had a mere easement or privilege of use for access and convenience collateral to their tenancy.

This being correctly charged, it was manifestly not erroneous for the court to refuse defendant's special charge No. 1, which would have left it to the jury to determine from the evidence whether defendant had transferred the entire possession and control of the premises to his tenants with the coal chute as an appurtenant.

But the further testimony in the case presented another important feature also bearing on the liability of the defendant, directly under the Ohio authorities cited. It shows by plaintiff that the decedent was walking along the

pavement in the ordinary way, with his wife; and that there was nothing visible about the coal chute to indicate that it was open or to warn any one of danger and that "the cover was not misplaced in any way, but was secure in its position where it belonged"; and that those conditions being as thus described the decedent unsuspectingly stepped upon the lid to pass onward. The lid, on being thus stepped upon, tilted and precipitated decedent into the hole astraddle of the lid and upon its upturned edge, and inflicted injuries that proved fatal two days later after much suffering.

There was no denial or counter evidence as to these facts of actual observation. Defendant attempted to show by opinion evidence that the lid, if properly seated, could not tilt under such circumstances; but this was of little significance as opposed to observed facts, and was practically destroyed by other conditions referred to later.

It was further shown, by both sides, that the lid in this case had no chain or other means of fastening nor provision of any kind for the attachment of any; and defendant proved, further, that this was an inherent condition of the original construction and never remedied. Defendant also showed that the cover was a perforated cast-iron disc about eighteen inches in diameter, about seven-eighths of an inch thick, resting, when in proper position, upon an inner concentric ledge from one-quarter to one-half inch wide, within the circular open cylinder or casing embedded in the pavement. The witnesses to these facts testified that any one could at any time lift or displace the cover by the perforations; and also, that if the cover were prevented from fully seating at one side by a pebble or piece of coal, so as to remain in a slightly inclined position, it would be apt to tilt when stepped on.

These facts are of vital significance. Taking the last suggestion, for instance, it will be manifest from the nature, sizes and proportions of the parts described, that a cover slightly beveled (as would naturally be the case in casting) would, if slightly raised at one side, not rest upon the supporting ledge at the opposite side. In this condition it would still be within the cincture of the casing and yet

be without support at one side, while to all appearances to one walking on the pavement, the cover would be, as described by the testimony in this case, "not misplaced in any way, but secure in its position where it belonged." If stepped upon, the unsupported arc of the cover would at once go down, and the cover, pivoting at the opposite ends of the transverse diameter upon the concentric ledge of the casing, tilt to a vertical position. In fact, this condition could very easily and very naturally be brought about without the intervention of any foreign agency (such as a pebble or piece of coal), by simple neglect to use special care in seating the cover after use. The addition to the structure of a chain or other simple factening, would have furnished a means of absolute prevention of danger; and the testimony here shows that such means of safety are quite commonly used.

Courts of high authority have condemned such structures without fastenings, and held them to be unsafe as matter of law.

Thus in *Jennings* v. *Van Shaik*, 108 N. Y., 534, it is said:

·"If the cover was so made that it could be opened by any one from the outside maliciously or accidentally the construction was faulty."

In *Stevenson* v. *Joy*, 152 Mass., 45 (47), it was held that the landlord was chargeable with notice of a cover being unfastened because, having provided no means of fastening, he ought to have known it.

So in *Dickson* v. *Hollister*, 123 Pa. St., 421, the following charge of the lower court was approved:

"Parties who make holes in the pavement are bound to know that if the covers are not kept solidly in place somebody may fall through, and are therefore bound to exercise all reasonable care, skill and prudence with reference to the possible injury that may occur to persons passing along the street. Of course, they are not insurers, but they are bound to exercise such degree of mechanical skill

in arranging the openings as would be ordinarily proper and necessary to protect travelers in view of what might occur."

(See also *Johnson v. McMillan*, 69 Mich., 36.)

The closing words of the last citation seem to be particularly applicable to the case in hand, for the testimony shows clearly a structure essentially deficient in features conducing to safety. These defects are inherent in the structure and are not due alone to the mere absence of a recognized adjunct. The structure, taken as a whole, shows a culpable disregard of what is "ordinarily proper and necessary to protect travelers in view of what might occur." It, in other words, falls distinctly below the common and ordinary standard of mechanical knowledge, of which a court may properly take judicial knowledge. For more than a century, disc valves employed for various purposes, seating upon a concentric ledge within a casting in all essential respects similarly to the coal chute cover in this case, have been provided with depending wings or guides to compel proper seating. Cistern covers, thus constructed, of which examples exist in our public streets and in private use, and, indeed, many coal chute covers in common use, embody these and other means of safety equally simple and well known. In view of this common knowledge, there is absolutely no excuse for such slipshod construction as appears in this case; and, in view of the danger to life resulting from the neglect of proper precautions in this regard such carelessness can not be too strongly condemned. It is an affront to intelligence at this day, to say that a construction is or can be safe for public travel, which, having the appearance of safety and inviting reliance upon its integrity, proves a source of injury, or, as in this case, a death trap, to the unsuspecting citizen. It is the primary duty of municipal officers having jurisdiction of these matters to see that the public safety is at all times properly conserved; and the fact that lower standards of safety, based upon conditions prevailing when coal chutes in public pavements were few in number, have been long in use, is no excuse for adhering

to them at this day, when these structures have vastly multiplied and better standards are demanded by the changed conditions of modern life.

Considering the full bearing of the testimony in this case, a trial court might well be justified in applying the rule of *res ipsa loquitur,* and have left to the jury only the assessment of damages. The defendant had no cause of complaint when the court charged the jury only upon a rebuttable presumption of negligence, and left them to say whether upon the entire evidence the defendant was chargeable.

It will be unnecessary to follow the specifications of error in further detail. The action of the court in giving and refusing special charges, and in the general charge, all hinged upon the views of the law herein indicated, and we find in the record no error prejudicial to defendant. We are of opinion that the verdict for plaintiff was a necessary result of the testimony. A contrary verdict could not have been sustained.

Judgment affirmed.

*Clore, Dickerson & Clayton,* for plaintiff in error.
*W. W. Symmes,* for defendant in error.