JOHN L. DOWNING, Appellee, v. MERCHANTS NATIONAL BANK OF GREENE, Appellant.

**NEGLIGENCE:** Contributory Negligence—Failure to Apprehend Danger. A person who, *at an entrance apparently provided therefor*, enters a public business place on an errand connected therewith, is not guilty of contributory negligence *per se* because he does not look toward the spot where he is about to step.

**NEGLIGENCE:** Unsafe Condition of Place of Business. A jury question on the issue of negligence is presented by evidence tending to show that a door in the vestibule to banking rooms *appeared* to be the way provided for entrance into the bank, whereas said door led immediately into an opening to the basement.

**NEGLIGENCE:** Licensee. One who goes into a public business place on an errand connected therewith is not a mere licensee.

**NEW TRIAL:** Verdict—Excessiveness—$2,750. Verdict of $2,750 for personal injury held nonexcessive, in view of the fact that the amount which should be allowed for physical pain is peculiarly a jury question.

*Appeal from Butler District Court.*—C. H. KELLEY, Judge.

OCTOBER 18, 1921.

REHEARING DENIED JANUARY 20, 1922.

ACTION for personal injuries sustained by the plaintiff in falling down a stairway in the defendant's bank building. Verdict and judgment for plaintiff. Defendant appeals.—*Affirmed.*

*Sager & Sweet* and *J. G. Mitchell,* for appellant.

*E. H. McCoy* and *M. Hartness,* for appellee.

FAVILLE, J.—The appellant is the owner of a bank building in Greene, Iowa. The building faces to the south, and is located immediately adjacent to a sidewalk. In the front of the building is a vestibule, containing two doors. One door on the north side of the vestibule opens into the lobby of the bank. On the east of the vestibule is also a door, which opens into a stairway leading to the basement. The exterior of the building, showing this vestibule and the doors, is shown in the following photograph:

1. NEGLIGENCE: contributory negligence: failure to apprehend danger.

The stairway in question starts immediately from the threshold of the east door. On the inside of the building, the stairway is separated from the banking room by a balustrade or railing. This balustrade is the same height as the bank counter, and has something of the same general appearance and construction. The base of the bank counter is solid, while the balustrade has an open or latticework base, and the top of the balustrade is narrower than the top of the bank counter. The following photograph shows a view of this balustrade, taken through the open doorway leading from the vestibule to the stairway in controversy:

In the front of the bank building there are two large plate-glass windows, one of which appears in the first photograph. The following is a plat of a portion of the ground floor of the bank showing the situation:

About 5 o'clock in the afternoon of April 1, 1916, the appellee, desiring to transact some business with an officer of the bank, entered the vestibule of the bank. It was a bright day, and the sun was shining. The appellee had been to the bank once or twice, before the day in question. At the time he entered the vestibule, the evidence tends to show that the door leading into the bank lobby or corridor was closed, and the curtain drawn, and that the door on the right or east side of the vestibule, leading to the stairway, was open. This door swung into the vestibule, so that, when opened, it partially at least obstructed the door leading into the bank. As the appellee entered the vestibule, he claims, the open doorway was in front of him, and he looked through the opening and across the balustrade above referred to, and saw the officer of the bank for whom he was looking, in the banking room. He testified that he believed the balustrade to have been the bank counter, and believed that he was walking into the bank proper. He immediately proceeded

through the open doorway in the direction of the bank officer; and as soon as he stepped through the doorway, he was precipitated down the stairway, and suffered the injuries complained of.

I. It is urged in behalf of the appellant that, under the circumstances surrounding the accident, the appellee was guilty of contributory negligence, and that the court should have so directed the jury, and withdrawn the case from its consideration. If all fair-minded and reasonable men would agree, under the facts disclosed, that the appellee was guilty of contributory negligence, then the court should so declare, as a matter of law.

It is urged that the appellee must be held to be guilty of contributory negligence because of the fact that, under the circumstances disclosed, he passed through the open doorway without looking to see where he was stepping. It must be remembered that this was a building that the public was invited to enter. If the jury believed the appellee's testimony regarding the conditions surrounding him at the time, he believed, and had reason to believe, that he was walking through the open doorway into the bank building, to transact business with an officer of the bank, whom he saw, and who was behind what appeared to appellee to be the counter of the bank.

It is strenuously argued that, if he had looked to the floor, he would have seen the open stairway, and that it was his duty so to look, and to observe where he was walking. We are not prepared to hold that, as a matter of law, a person about to enter a bank, store, or other business building which the public is invited to enter for the transaction of business, is guilty of negligence in failing to look to the floor of the vestibule or corridor of such a place of business, before crossing the threshold of an open door.

As a general rule, it may be stated that the defendant owed a duty to all persons who properly came to the bank on business, to exercise reasonable care and prudence to provide a safe and suitable entrance to said bank, and to have the approaches thereto so constructed and maintained that visitors would not be liable to step into dangerous pitfalls by reason of misleading doors. As bearing on this general proposition, see *Foren v. Rodick*, 90 Me. 276 (38 Atl. 175); *Gordon v. Cummings*, 152 Mass. 513 (25 N. E. 978); *Hayward v. Merrill*, 94 Ill. 349; *Camp*

*v. Wood,* 76 N. Y. 92; *Gillvon v. Reilly,* 50 N. J. L. 26 (11 Atl. 481).

"It is a sound rule of law that it is not contributory negligence not to look out for danger when there is no reason to apprehend any." *Engel v. Smith,* 82 Mich. 1 (46 N. W. 21).

The cases discussing the question of contributory negligence and negligence where the facts are similar to those in the case at bar are somewhat numerous. We cannot review all of them.

In *Hayward v. Merrill,* 94 Ill. 349, plaintiff was a guest at a hotel. His room was in the hallway, and was numbered 38. It was the corner room. About two and one-half feet from it was another room, numbered 40. The doors of the two rooms were alike. Gas was burning in the hall, but not very brightly. The plaintiff had recently been a guest at the hotel, and occupied Room 38, which was now assigned him. By mistake, he opened Room No. 40, and fell down an opening and was injured. It was held that the case was properly for the jury.

In *McRickard v. Flint,* 114 N. Y. 222, 226 (21 N. E. 153), it appeared that the plaintiff was in defendants' building, where he observed a folding door that was usually kept closed during the day. When he approached the folding door, it was partly open, and he opened it farther and entered. It was between 12 and 1 o'clock in the afternoon, and within the room it was light. If the plaintiff had stopped and looked about him when he entered the door, he could evidently have seen the situation. The court held that the question of contributory negligence of the plaintiff was properly for the jury.

In *Clopp v. Mear,* 134 Pa. 203 (19 Atl. 504), it appeared that the defendant's store had two entrances, which presented the same appearance when the outside doors were closed. Between these doors was a display window. The northerly entrance was intended for purchasers. When the doors were closed, as they were at the time of the injury, the entrances were externally alike. Plaintiff and her friend, passing the store, saw in the window an article which one of them wished to purchase. Plaintiff opened the southerly door, and plunged into a cellar. It was held that the questions of negligence and contributory negligence were properly for the jury.

*Rhodius v. Johnson,* 24 Ind. App. 401, is a case where a

woman stepped from a hallway through an open door into an elevator shaft. The evidence shows that, when she opened the door, she walked in, without paying any attention to what she was stepping into. The court said:

"The question to be determined from the evidence is whether appellee was proceeding as an ordinarily prudent person would have proceeded under the circumstances. An open doorway, if not an invitation to enter, was certainly not a warning of danger. What is due care must depend upon circumstances."

The court held that the question of contributory negligence was for the jury.

In *Foren v. Rodick,* 90 Me. 276 (38 Atl. 175), it appeared that a set of offices in a building were occupied by a physician, and a sign bearing the physician's name was affixed to the outside of the building a few feet above the sidewalk, one end being fastened to the casing on the right-hand side of the cellar door, and the other end to the casing on the left-hand side of the main entrance door. The plaintiff, desiring to visit the physician, by mistake opened the door to the cellar, and fell and was injured. The evidence showed that the double doors of the main entrance were open, revealing a vestibule or lobby; that the store and sidewalk and, to some extent, the landing at the entrance, were lighted by electric lights, and the cellar was well provided with windows. The plaintiff testified that she took no pains to know where she was stepping. The court said:

"She was seeking to enter the building by the implied invitation of the defendants. She had a right to expect reasonable safety and convenience in the approaches. She was not required to use extraordinary precaution, but only such ordinary care and caution as persons of reasonable prudence, care, and discretion usually and ordinarily exercise under such circumstances."

It was held to be a case for the jury.

In *Gordon v. Cummings,* 152 Mass. 513 (25 N. E. 978), an elevator well in a building opened directly on the street, by a doorway separated by a post one foot wide from the entrance to the hallway of the building, which was of about the same construction, and the threshold of which was a continuation of that of the elevator entrance, but not quite of the same width. The

entrance to the hallway proper had no door, but the entrance to the elevator could be closed by a door, and by hooking a chain across it. Plaintiff, seeking to enter the hallway on a dark evening, stepped into the elevator entrance, which was not closed, and was injured. The plaintiff had passed very many times, and was aware that the two entrances were close to each other. The court held that the case was properly submitted to the jury.

In *Engel v. Smith*, 82 Mich. 1 (46 N. W. 21), we quote from the syllabus in the Northwestern Reporter, as follows:

"In front of the rear door of their store, and about a foot and a half distant from it, defendants maintained a hatchway opening into the cellar. There was no railing around the hatchway, and such door was freely used for entrance into the store. Plaintiff, who did business in the store, went out, to the knowledge of one of defendants' employees, and in his absence the hatchway was opened. The door was left unlocked, and no one stationed at the opening to give notice thereof. Plaintiff returned through such door, and fell through the hatchway. *Held* that defendants were negligent.

"Plaintiff was fully acquainted with the location of the hatchway, and knew that it was customary, at the time of day the accident happened, to use it. He did not stop to see whether the trap door was open, but it had been customary to keep the door locked when the hatchway was opened. *Held* that the question of contributory negligence was for the jury."

Appellant relies upon *McNaughton v. Illinois Cent. R. Co.*, 136 Iowa 177, as being controlling in this case. We do not so regard it. In that case, a lady entered the women's waiting room of a railway station, and immediately opened a door, supposing it to be the door to the toilet room, stepped through, and fell to the bottom of a stairway. The word "basement" was painted upon the door, although it was obscured by the people gathered about it. The door to the toilet room was properly designated, but this was somewhat obscured from view by its location. The situation is altogether different from that disclosed in the instant case. We held in the *McNaughton* case that it was not negligence, under the circumstances, for the railway company to maintain this closed door with a knob and catch on it, leading to the basement. We said:

"Every precaution had been taken, save that of locking it, against its improper use."

The situation is altogether different from that in the case at bar, where the door in question was so located that, when open, as the evidence tends to show it was when the accident happened, it was the apparent way provided for persons having business with the bank to enter, for the transaction of such business. The open door, the presence of the man with whom appellee had business, the appearance of the balustrade, and all the attendant circumstances were such that the jury might have found that appellee was not guilty of negligence in failing to look toward the spot where he was about to step, as he passed through the open doorway. As bearing on this question, see *Mathews v. City of Cedar Rapids,* 80 Iowa 459; *Overton v. City of Waterloo,* 164 Iowa 332; *Erickson v. Town of Manson,* 180 Iowa 378.

Under all the facts and circumstances disclosed by this record, it was undoubtedly a question for the jury to determine whether or not the appellee was guilty of negligence in stepping through the open doorway under the circumstances disclosed, and it was not error to refuse to direct a verdict on this ground. As bearing somewhat on the general proposition involved, see *Gardner v. Waterloo Cream Sep. Co.,* 134 Iowa 6.

Neither was it error on the part of the court to refuse to direct the jury to return a verdict in favor of appellant on the ground that the evidence fails to show that it was guilty of negligence. It must be remembered that this building was one to which the public was invited to come, for the purpose of transacting business. It certainly was for the jury to say whether the appellant was guilty of negligence in maintaining this building with the two doors in close proximity opening from this vestibule, one of which the public was invited and expected to enter, and the other of which opened directly into a precipitous stairway. It was for the jury to say whether it was negligence to permit the door leading to this stairway to be open, under the circumstances disclosed by the record, if the jury found that it was open, and to leave the same without barrier or guard, to protect one who might enter the vestibule. The question of appellant's negligence, under all of the facts, was clearly one for the

2. NEGLIGENCE: unsafe condition of place of business.

jury, and the court did not err in not directing a verdict.

II.   It is urged that the appellee was a mere licensee.   The evidence of the appellee was to the effect that he went to the bank to transact some business with the bank regarding the settlement of a sale; also to see one of the officers

3.  NEGLIGENCE:   of the bank in regard to a township matter.  The
    licensee.

bank knew that the officer of the bank was also an officer of the township and did township business at the bank, with the consent of its officers.   Under these circumstances, the appellee was something more than a mere licensee, in going upon the premises to conduct this business, even though it was of a dual character.   The instruction complained of on this subject was proper, and meets with our approval.

III.   It is strenuously urged that the verdict returned by the jury, of $2,750, is excessive, and is the result of passion and prejudice on the part of the jury.   The verdict is large, for the injury sustained.   The appellee's damages are

4.  NEW TRIAL:       not to be measured by the mere loss of time, but
    verdict: exces-
    siveness: $2,750.   are also for pain and suffering, for which the

amount to be awarded is peculiarly within the province of the jury.   The plaintiff's injuries were somewhat serious and painful.   We cannot say that the amount awarded is so large as to be indicative of passion and prejudice on the part of the jury. We cannot substitute our judgment for that of the jury in a matter of this kind, where the verdict does not appear to be excessive, or to be the result of passion and prejudice.   We find no errors urged by the appellant which would justify a reversal of the case.

It therefore follows that the judgment of the district court must be—*Affirmed.*

EVANS, C. J., STEVENS and ARTHUR, JJ., concur.