MARY H. FOREN vs. FOUNTAIN RODICK, and another.

Hancock.    Opinion May 21, 1897.

*Negligence.    Landlord.    Entrance to Cellar.*

The plaintiff sustained severe personal injuries by falling into the cellar of Rodick Block in Bar Harbor. The first floor of the block is divided into stores, and the second floor into rooms which are leased for offices. The main entrance to the stairway leading to the second floor is about midway of the length of the building, and is closed by double doors opening inward to a short landing at the foot of the staircase. Twenty-two and one-half inches from these doors, and at the same height from the sidewalk, is a single door opening from the sidewalk inward to the cellar. There is no staircase by which to enter the cellar and no other landing than the top of the cellar wall. A crude ladder, leading from the doorway to the bottom of the cellar, afforded the means of descent. This cellar door was unfastened on the evening of the accident, and when the door was open there was no railing or other safeguard to prevent a person from stepping over the cellar wall and falling into the cellar.

One set of offices on the second floor was occupied at the time in question by a practicing physician, and his sign was affixed to the outside of the building between the cellar door and the main entrance. On the evening of the accident the plaintiff was passing along on the sidewalk intending to go up to the physician's office. She was not familiar with the premises, but seeing the doctor's sign and supposing that it indicated the cellar door as the place of entrance, she opened the door, stepped over the wall and fell to the bottom of the cellar.

*Held*; that the conditions connected with the approach to the main entrance of the building were misleading and dangerous; that in this respect the building was *improperly constructed and negligently maintained*; and that the plaintiff was on the premises by the implied invitation of the defendants, on legitimate business, in the exercise of such care and caution as persons of reasonable prudence and discretion usually exercise under such circumstances.

ON REPORT.

The case appears in the opinion.

*L. B. Deasy and A. W. King*, for plaintiff.

*John A. Peters Jr., and Chas. H. Wood*, for defendants.

Counsel cited: *Gallagher* v. *Proctor*, 84 Maine, 41; *Murphy* v. *Deane*, 101 Mass. 455; *Lee* v. *McLaughlin*, 86 Maine, 410;

*Clifford* v. *Atlantic Cotton Mills*, 146 Mass. 47; *Lowell* v. *Spaulding*, 4 Cush. 277; *McCarthy* v. *York County Savings Bank*, 74 Maine, 315; *Reardon* v. *Thompson*, 149 Mass. 267; *Metcalfe* v. *Cunard Steamship Co.*, 147 Mass. 66; *Walker* v. *Winstanley*, 155 Mass. 301; *Mellen* v. *Morrill*, 126 Mass. 545; *Howland* v. *Vincent*, 10 Met. 371.

SITTING: WALTON, EMERY, HASKELL, WHITEHOUSE, WISWELL, STROUT, JJ.

WHITEHOUSE, J. On the fifteenth day of August, 1895, the plaintiff sustained severe personal injuries by falling into the cellar of "Rodick Block" owned by the defendants and situated at the corner of Main and Cottage Streets in Bar Harbor. It is claimed in this action that the defendants are liable in damages by reason of the improper construction and careless management of the cellar door adjacent to the passage way leading to the second story of the building. The evidence is reported for the consideration of the law court, and by virtue of an agreement between the parties, if judgment is rendered for the plaintiff, it shall be for the sum of $800.

On Cottage Street, Rodick Block stands substantially on the line of the street, the wall of the building being flush with the sidewalk. The block is devoted entirely to business purposes. The first floor is divided into stores, and the second floor into rooms which are leased for offices. The main entrance to the stairway leading to the second floor is from Cottage Street, about midway of the length of the building. It is about four feet in width, and is closed by double doors opening inward to a short landing at the foot of the staircase. Twenty-two and one-half inches at the left of these doors, as one faces the building, and at the same height from the sidewalk, is a single door opening from the sidewalk inward to the cellar. There is no staircase by which to enter the cellar and no other landing than the top of the cellar wall. The cellar was eight feet and four inches deep and the descent was ordinarily made by a crude ladder leading from the doorway to the

bottom of the cellar. This cellar door appears to have been unfastened a greater portion of the time, and frequently ajar, during the summer of 1895. It was unfastened on the evening of the fifteenth of August when the accident happened. When this door was open there was no railing or other safeguard, and no warning sign of any kind to prevent a person from stepping over the cellar wall and falling to the bottom of the cellar.

The block was built under the personal direction and supervision of the defendants. At the time of the accident all the stores on the first floor, and all the offices on the second floor with a single exception, were occupied by the defendants' tenants to whom they had been leased. It is not controverted that the defendants retained the control, which the landlord usually has and exercises, over the building and its appurtenances, and had charge of the general approaches, entrances, stairways and halls. The cellar had not been leased to any tenant exclusively, but the defendants themselves occasionally used it; and it satisfactorily appears that they had the same control over the cellar door and the entrance to the cellar as over the main entrance and stairway leading to the second floor. By a reservation in one of the leases, the defendants also had the exclusive use of a fireproof vault in one of the stores on the first floor, and one of them went there nearly every day.

One set of offices on the second floor was occupied at the time in question by Geo. R. Hagerty, a practicing physician, and the sign bearing the name " G. R. Hagerty, M. D.," was affixed to the outside of the building, a few feet above the sidewalk, one end being fastened to the casing on the right hand side of the cellar door and the other end to the casing on the left hand of the main entrance door.

About nine o'clock, on the evening in question, the plaintiff and a lady friend were returning from a " Mission meeting," and walked along on Cottage Street by the side of Rodick block, the plaintiff intending to visit Dr. Hagerty's office to consult him professionally. Being engaged in conversation they passed beyond the main entrance and turned to retrace their steps. What then happened is thus described in the plaintiff's testimony: "I was

looking for the doctor's sign—Doctor George Hagerty. I saw that sign on the right side of the cellar door, on the casing. I said to Mrs. Lewis 'Here's the door now.' I opened the door with my right hand. I took hold of the knob of the door. I stepped with my left foot forward and fell. Then I remember of hearing as it were in the distance a rumbling noise. Then everything was a blank. . . . . When I opened the door, I did not look for anything, because I was so sure of a footing. I opened the door and went right in. . . . . I had never been to Dr. Hagerty's office before. I had never been on the second floor of the Rodick block before. . . . . Before opening the door leading into the cellar I did not see the other door, the entrance into the hallway that goes up. The door that I opened was not fastened in any way. When I saw the doctor's sign on the door I did not think I had to look after any further door than that one. . . . . I supposed that the door led to the entry way that went to the doctor's office as the doctor's sign was on the door."

Under these circumstances, upon well-settled and familiar rules of law, all persons having occasion to visit any of the offices on the second floor on legitimate business with any of the defendants' tenants, had an implied invitation from the defendants to use the common entrance and passage way for that purpose; and the defendants owed a duty to all such persons which carried with it an obligation to exercise reasonable care and prudence to provide a safe and suitable entrance to such offices, and to have the approaches thereto so constructed and maintained that visitors would not be liable to step into dangerous pitfalls by reason of misleading doors and deceptive landings. *Stratton* v. *Staples*, 59 Maine, 94; *Campbell* v. *Portland Sugar Co.*, 62 Maine, 552; *Sawyer* v. *McGillicuddy*, 81 Maine, 318; *Shipley* v. *Fifty Associates*, 101 Mass. 251; *Readman* v. *Conway*, 126 Mass. 374; *Looney* v. *McLean*, 129 Mass. 33; *Learoyd* v. *Godfrey*, 138 Mass. 315; *Gordon* v. *Cummings*, 152 Mass. 513; *Hayward* v. *Miller*, 94 Ill. 349, (S. C. 34 Am. Rep. 229) ; *Camp* v. *Wood*, 76 N. Y. 92; *Gilloon* v. *Reilly*, 50 N. J. L. 26.

In *Sawyer* v. *McGillicuddy*, 81 Maine, 318, the defendant was

the owner of the building in question including a common stairway provided for the accommodation of the different tenants in the upper part of the building. The plaintiff was injured by reason of a defect in the landing at the foot of the stairway, and the court say: "The defendant preferred to make one passageway for all, rather than one for each. This was an invitation, and inducement, for all who needed such accommodation to come and pass over this passage way. It was a way provided for them to pass over precisely as a man provides a way for his customers to get to his place of business, and the same implied covenant to keep in safe and convenient repair must exist as much in the one case as in the other."

In *Stratton* v. *Staples*, 59 Maine, 94, the facts bear an instructive analogy to the present case. The defendant was the owner of the block of four stores nearly opposite the Court House in Augusta. The entrance to the south store occupied by the defendant's tenant as a drug store was up four narrow steps, immediately north of which was a descending rollway leading to the basement of the block. In front of the stores north of the rollway was a continuous platform extending from the rollway of the block to the north end of the block. The rollway was unprovided with railing or other safeguard except a buttress rising nine inches above the level of the platform. The plaintiff went upon the premises in the evening for the purpose of having a business interview with the defendant, and not knowing which one of the stores was occupied by him she went upon the platform near the north end of the building and looked at the doors as she walked along to ascertain. Seeing a light in the drug store at the south end, she decided to go in there and inquire for him, and not knowing of the existence of the rollway but supposing that the platform continued past the entrance to the drug store at the south end, she walked directly on, stumbled over the northerly buttress and fell into the rollway. Mr. Justice CUTTING presiding instructed the jury that, "for all persons who had occasion to go upon the platform in order to enter either of the stores on legitimate business, he would be liable for all damages occasioned by these erections provided they were unsafe or dangerous."

In *Gordon* v. *Cummings*, 152 Mass. 513, which more closely resembles the case at bar, the plaintiff was injured by falling into an elevator-well which communicated directly with the street by an opening provided with a sliding door and a chain to guard it. Separated from the opening by a granite post a foot wide was an open doorway of about the same size and construction and on the same level from the street, which led to the common entry of the building. At the time of the accident the elevator opening was not protected by the chain, and the plaintiff mistook it for the open doorway. In the opinion the court say : " He had a right to suppose that, when seeking to enter where he had a right to go, he would not be exposed to this danger, and that an entrance by its side, easily to be mistaken for it, would not be left open and unenclosed by any barrier at a time when it was not in use. . . . If the defendants had induced, or invited through their tenants, the plaintiff to enter at Number 619 Albany Street, so far as the access thereto was under their own control, it was their duty to see that this access was not endangered by their negligence in the management of the other parts of their building, in order that a person rightfully seeking to enter should not be exposed to the liability of a fall into an opening so constructed that it might well be mistaken for the proper entrance."

So in *Hayward* v. *Miller*, 94 Ill. 349, the plaintiff was a guest at a hotel kept by the defendant, and was assigned to room thirty-eight on the second floor. Adjoining that room on the same side of the hall was a door resembling the door of the room, only two and a half feet distant communicating with an elevator-well.

The door of the plaintiff's room and of the elevator-well were numbered 38 and 40 respectively, and had knobs exactly alike. The plaintiff proceeded as he supposed to room thirty-eight, but by mistake opened the door numbered forty and stepping in fell to the basement through the opening. The court say : " The proprietor of a hotel to which he invites the public to come that he may gain thereby, has no right to permit the existence of such an opening as this one was unless suitably guarded, that the slightest mistake on the part of the guest might not prove fatal. Had the plaintiff

been intent on observing the numbers on the door, he might have discovered the room he wished to enter, but by merest accident he opened the next door and this slight inattention was the cause of his severe injuries. The opening ought to have been better protected than it was and the omission to do so under the circumstances proven, may well be attributed to the defendant as gross negligence."

The conclusion is irresistible in the case at bar that the maintenance of the unfastened door and unguarded entrance to the cellar, in close proximity to the main entrance to the second floor of the building, without any sign or warning to distinguish the one from the other, and the attachment of the professional sign of a tenant to the building in such a position between the two doors as to leave it uncertain to which entrance it was designed to give direction, rendered the conditions connected with the approach to the main entrance of the building, misleading and dangerous. In this respect the building was improperly constructed and negligently maintained. There is testimony in behalf of the defendants, it is true, that Dr. Hagerty's sign was put up without their knowledge, but one of them made daily visits to the premises, and if he was not aware of the position of the sign, he might have become so by the exercise of reasonable and ordinary care and attention.

But it is earnestly contended by the learned counsel for the defendants that even if they failed to discharge the obligations resting upon them respecting the construction and management of the building and its approaches, the plaintiff is not entitled to recover by reason of her own contributory negligence at the time of the accident.

Whether the plaintiff was in the exercise of due care and caution is a question involving more difficulty than that of the defendants' negligence. She had lived in Bar Harbor for more than three years, and there is evidence tending to show that she had visited Dr. Hagerty's office before. She had frequently passed the block, and had visited some of the stores several times. The double doors of the main entrance were open, the street and side-

walk and to some extent the landing at the entrance were lighted by electric lights, and the cellar was well provided with windows. If she had observed the situation more attentively, and exercised greater caution, she undoubtedly might have discovered, on opening the cellar door, that there was no stairway there leading to the second floor, and that there was a cellarway without stairs below. In answer to the question by defendants' counsel: "Did you take pains to know where you were stepping" the plaintiff herself says: "No, sir! If I had, I should not have gone down there." In other words, if she had not felt satisfied that the door she opened led to the second floor, she would not have opened it; being so satisfied she did not feel the necessity of further examination. She was confident that she would step onto the landing at the foot of the main stairway. Even if she had been up stairs before she was not familiar with the premises or its approaches. She was not aware that the doors of the main entrance were usually open.

She saw a door having the outward indication of a safe and regular entrance, opening directly from the sidewalk, with the doctor's sign on the casing apparently inviting her to enter. She turned the knob, and the door readily yielded "about the same as any door." She says it was dark when she opened the door. There was nothing to suggest a "yawning abyss." The existing condition was not instantly manifest, but suspecting no danger she naturally stepped over the threshold simultaneously with the inward swing of the door. She was seeking to enter the building by the implied invitation of the defendants. She had a right to expect reasonable safety and convenience in the approaches. She was not required to use extraordinary precaution, but only such ordinary care and caution as persons of reasonable prudence, care and discretion usually and ordinarily exercise under such circumstances. And while the question is not free from doubt, it is the opinion of the court, after carefully weighing all of the evidence, that there is a preponderance in support of the proposition that the plaintiff was not guilty of contributory negligence, but may fairly be deemed to have been in the exercise of ordinary care.

*Judgment for plaintiff.*