## GIBSON v. GERNAT.

(Court of Appeals of District of Columbia. Submitted December 1, 1919.
Decided March 1, 1920.)

### No. 3278.

1. **Master and servant ⊊284(3)—Scope of employment question for jury.**

   In an action by a governess against her employer for injuries received when she fell down a dumb-waiter shaft while looking for a butler, *held*, on the evidence, that the question whether she was acting within the scope of her employment at the moment of the accident was for the jury.

2. **Master and servant ⊊101, 102(1)—Reasonably safe working place required.**

   It is the duty of an employer to provide a reasonably safe place for work.

3. **Master and servant ⊊286(18)—Negligent guarding of dumb-waiter shaft held question for jury.**

   In an action by a governess against her employer for injuries received when she fell down a dumb-waiter shaft, equipped with doors, similar to the other doors in the house, whether the opening was adequately protected, and whether defendant had provided a reasonably safe place in which plaintiff was to work, *held* properly submitted to the jury under the evidence.

4. **Master and servant ⊊289(19)—Contributory negligence of governess, falling down dumb-waiter shaft, question for jury.**

   In an action by a governess against her employer for injuries received when she fell down a dumb-waiter shaft, opening to which was an ordinary door, not distinguishable from other doors, in a dark stairway, *held*, that the question whether plaintiff was guilty of contributory negligence was properly submitted to the jury.

5. **Appeal and error ⊊882(8)—Appellant cannot complain of admission of evidence, where he introduced similar evidence.**

   In an action by a servant for injuries received when she fell down a dumb-waiter shaft from the fourth floor, defendant cannot complain of introduction in evidence of photographs of the opening into the dumb-waiter on the third floor, where both parties introduced evidence concerning the opening to the dumb-waiter on the third floor.

6. **Evidence ⊊359(3)—Photographs of opening to dumb-waiter on third floor admissible, although plaintiff fell from fourth floor.**

   In an action by a governess to recover damages for personal injuries received when she fell into a dumb-waiter from the fourth floor, photographs of the opening into the dumb-waiter on the third floor were admissible, on the question as to whether plaintiff was exercising due care and caution in entering the doorway constituting the opening to the dumb-waiter on the fourth floor, plaintiff never having been on such part of the fourth floor, where opening was not guarded by a gate as well as a door, as was true of the opening on the third floor.

   Van Orsdel, Associate Justice, dissenting.

Appeal from the Supreme Court of the District of Columbia.

Action by Ethel M. Gernat against Grace McMillan Gibson. Judgment for plaintiff, and defendant appeals. Affirmed.

F. D. McKenney, J. S. Flannery, and G. B. Craighill, all of Washington, D. C., for appellant.

S. F. Taliaferro and Thos. P. Littlepage, both of Washington, D. C., for appellee.

⊊For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
267 F.—20

ROBB, Associate Justice. This appeal is from a judgment in the Supreme Court of the District for the plaintiff, appellee here, in an action for damages growing out of injuries sustained by the plaintiff in falling down a dumb-waiter shaft in defendant's dwelling house.

At and for about five weeks prior to the time of the accident, plaintiff had been employed by the defendant in defendant's home in this city, exclusively as a nursery governess. The house, in which defendant had resided for several years, was of the English basement type and four stories in height. Plaintiff's duties were chiefly confined to the third floor, where she slept in proximity to the children, and in the front part of this floor was located defendant's sleeping apartment. There were two stairways leading from the third to the fourth floor; one stairway being in about the center of the house and the other in the rear. In the front part of the fourth floor were playrooms for the children, but plaintiff always had used the center stairway in gaining access thereto. The dumb-waiter was in an inclosed shaft extending from the first to the fourth floor, and was equipped on the different floors with ordinary doors, "just the same as any other door leading into a room." Plaintiff knew that between the door on the third floor and the shaft was a gate that extended across the opening, but prior to the accident she had never used the rear stairway on the fourth floor, and there is no evidence tending to show that she knew the location of the dumb-waiter on that floor. Indeed, the evidence fails to show plaintiff even knew that the dumb-waiter extended to the fourth floor. In this connection defendant testified that plaintiff "had nothing to do with the elevator whatsoever." The door to the dumb-waiter shaft on the fourth floor was about three feet distant from and directly opposite the top step or landing of the back stairway, and, unlike the third floor, was equipped with no gate. The door on this fourth floor was supplied with an ordinary knob, and had a lock and key; the key always being left in the lock.

On the night of the accident defendant had been out and returned home some time between 10 and 11 o'clock. Plaintiff was in the sewing room, where she had been all the evening. This room was between the front stairway and defendant's room. According to plaintiff's testimony, which does not differ materially from that of defendant, after some casual remarks, plaintiff inquired of defendant, "Can I do anything for you?" Defendant replied, "Well, I have been ringing and ringing and ringing. Could you 'call or find' Hugh" (the second butler). Plaintiff then asked, "Where do you think he would be?" and defendant answered, "He is not downstairs; he may be in his room." Plaintiff responded that she would see what she could do "and went to call the man"; defendant going to her room. On this point defendant testified that plaintiff, when defendant came in, inquired if there was anything plaintiff could do for her, to which defendant replied that all the lights were on; that she had been ringing the bell, but no one answered. She then inquired of plaintiff if plaintiff knew where Hugh was. Defendant further testified as follows:

"Plaintiff answered that she did not, and defendant said, 'Will you be good enough to call him?' Plaintiff said, 'I will go and get him;' and witness

replied, 'Don't bother to go; just call. As he is not in the pantry, and not downstairs, he may be in his room.' "

The man's room was in the servant's quarters, in the rear part of the fourth floor. Plaintiff had not been in the back part of the house on the fourth floor, "and there was a door that shut it off" from the other part of that floor. She "did not know actually where his [Hugh's] room was," but did know that the help slept on the fourth floor, and "had seen them come up and down the back stairway." Plaintiff went to this stairway, opened the swinging door, and called to Hugh several times. Receiving no response, she proceeded up the stairway, which was in darkness, and when she reached the top stair (but a step from the elevator shaft door) endeavored to find an electric bulb, and, while doing so, continued to call without result. Her hand came in contact with a door handle or knob; the door being ajar. She opened the door, and, as she took a step forward, called again, and fell down the dumb-waiter shaft, receiving serious and permanent injuries. As she expressed it:

"I had trodden into the dumb-waiter, which I had not realized was there."

The evidence for the defendant was to the effect that she had cautioned plaintiff to keep the children away from the elevator on the third floor; "that plaintiff had no duties to perform in connection with the fourth floor, except at the front of the house, where the playrooms were, and plaintiff made use of the front staircase to get up and down, to and from the playrooms." The assistant butler, Hugh, in an affidavit received in evidence by agreement of counsel, because he was out of the jurisdiction, stated that it was solely his duty to operate the elevator to or at the fourth floor, and that, in accordance with defendant's instructions, "all doors leading into the elevator shaft were kept locked when not in use"; that the last time he used the elevator at the fourth floor, prior to the accident, he locked the door, and left the key in the lock, as usual.

The theory of the declaration is that it was defendant's duty to provide plaintiff with a reasonably safe place in which to work; that there was a breach of this duty, in that the dumb-waiter shaft on the fourth floor was not properly guarded; and that, while acting within the scope of her employment and in the exercise of reasonable care, she was injured in the manner stated.

[1] The first assignment of error relates to the action of the court in overruling defendant's motion for a directed verdict at the close of all the testimony. The jury was justified in finding that the plaintiff, at the moment of the accident, was attempting to carry out her employer's instructions, and was acting within the scope of those instructions; that is, within the scope of her employment, as alleged in the declaration. Defendant repeatedly had rung for the butler, and, when she made known to the plaintiff that he was not downstairs, but might be in his room, and that plaintiff was to "call or find" him (for such was the testimony of the plaintiff, which the jury, of course, had a right to accept), plaintiff clearly was justified in pursuing the course she adopted. Indeed, if we adopt defendant's recollection of the oc-

currence, there is no change in the result; for the plaintiff still was justified in interpreting the language used to mean that, if unable to locate the butler by calling to him, she was to proceed to his room, for the last words of the defendant, according to defendant's testimony, were, "He may be in his room."

[2] It is conceded that it was the duty of the defendant to provide for the plaintiff reasonably safe surroundings; that is, a reasonably safe place in which to work. Carter v. McDermott, 29 App. D. C. 145, 10 L. R. A. (N. S.) 1103, 10 Ann. Cas. 601. But it is insisted that there was no breach of that duty. The views of other courts, in cases involving similar conditions, will be helpful. In Roth v. Buettell Bros. Co., 142 Iowa, 212, 119 N. W. 166, the ground of negligence charged was the omission to keep in repair the latch to the door of an elevator shaft and the bar extending horizontally across the entrance thereto. Plaintiff had been employed in the building for nine years, was a foreman, and familiar with surrounding conditions. The day was stormy, and it was so dark in the elevator shaft that objects could not be observed distinctly. As he approached, he noticed that the door to the elevator was open, and that the bar was not in place, "and supposing he saw the framework of the elevator, stepped in, and fell down the shaft." The court ruled that it was a question for the jury "whether defendant had exercised reasonable care for the protection of its employés against injury which might result from the absence of barriers to the shaft."

In Foren v. Rodick, 90 Me. 276, 38 Atl. 175, plaintiff sustained injuries by falling into the cellar of a block, the first floor of which was occupied by stores, and the second floor by offices. Near the double door entrance to the staircase leading to the offices was a single door opening from the sidewalk to the cellar. Plaintiff, although she previously had visited the office to which she was going, by mistake opened the cellar door, stepped forward, and fell into the cellar; there being only a ladder leading down. The court said:

"The conclusion is irresistible in the case at bar that the maintenance of the unfastened door and unguarded entrance to the cellar, in close proximity to the main entrance to the second floor of the building, without any sign or warning to distinguish the one from the other, and the attachment of the professional sign of a tenant to the building in such a position between the two doors as to leave it uncertain to which entrance it was designed to give direction, rendered the conditions connected with the approach to the main entrance of the building misleading and dangerous. In this respect the building was improperly constructed and negligently maintained."

Hayward v. Merrill, 94 Ill. 349, 34 Am. Rep. 229, is closely in point. Plaintiff was a guest in the hotel kept by defendant, and was assigned to a room, adjacent to the door of which was a similar door communicating with an elevator well. The hall was dimly lighted, and plaintiff, by mistake, opened the door to the elevator well and stepped through, to his injury. The court said:

"The opening ought to have been better protected than it was, and the omission to do so, under the circumstances proven, may well be attributed to the defendant as gross negligence."

In Camp. v. Wood, 76 N. Y. 92, 32 Am. Rep. 282, the defendant was proprietor of an inn, on the third floor of which was a dance hall, which he had let for the evening for a public dance. The hall was reached by two flights of stairs from the street, one directly over the other; the lower extending to the second floor and the upper to the third floor. The door and stairway in the second story occupied the same relative position to each other as the door and stairway below. Plaintiff, who had been drinking, passed down the flight of stairs leading from the third to the second floor, and, seeing an open door, which he supposed opened to the street, stepped out upon a dark and unguarded piazza or balcony and fell to the ground. The court said:

"The facts proved justified the jury in finding that it was dangerous to leave the door open, and that persons not familiar with the premises might, in the nighttime, without being chargeable with negligence, mistake this door for the street door, and go onto the awning, under the impression that they were going onto the sidewalk."

Clopp v. Mear, 134 Pa. 203, 19 Atl. 504, was an action based upon negligence, wherein it appeared that the store of defendant had two entrances of like appearance; one intended for customers and the other leading to a hatchway. The door to the latter entrance being unfastened, plaintiff opened it by mistake, "and, taking the entering step to the store, plunged headlong into the cellar." The court said that the jury had been properly instructed on the question of negligence and contributory negligence, and hence that it was unnecessary to notice specially any of the assignments of error; that "neither of them can be sustained without ignoring principles that have been so long and thoroughly well settled as to admit of no reasonable doubt." See, also, Gordon v. Cummings, 152 Mass. 513, 25 N. E. 978, 9 L. R. A. 640, 22 Am. St. Rep. 846; Parker v. Barnard, 135 Mass. 116, 46 Am. Rep. 450; Wendler v. People's House Fur. Co., 165 Mo. 527, 65 S. W. 737.

[3] We are of opinion that, upon both principle and authority, no error was committed by the court in the present case in submitting to the jury the question whether the opening in the dumb-waiter shaft on the fourth floor was adequately protected; in other words, whether defendant had provided plaintiff a reasonably safe place in which to perform the duties assigned her. It must be remembered that this opening was directly opposite and within a step of the back stair landing. There was nothing to distinguish the door to this opening from any other door, and, while it was provided with a lock and key, the key was permitted to remain in the lock—a fact known to the defendant. It is true that the butler, who alone operated the dumb-waiter, had been instructed to keep this door locked; but the plaintiff testified, and the jury evidently believed, that it was not locked upon the occasion in question. The possibility that the butler might forget to lock the door might have been anticipated by the defendant, for human memory is proverbially frail in matters of this sort. Unless the butler tried the door after using the elevator, he might not know whether it was locked or unlocked, for, if closed, it would present the same appearance, whether locked or unlocked. This danger evidently was

appreciated by the defendant, for on the third floor she had provided more adequate protection by the installation of a gate inside the door. On the fourth floor there was no gate, and not even a spring lock on the door. An ordinary door, that through oversight might be left unlocked, as in this case, was the only barrier between this four-story well and the hallway, with the stairway landing only three feet away. This was not adequate protection.

[4] But it is insisted plaintiff was guilty of contributory negligence. In each of the decisions to which reference has been made it was held that this question was for the jury. In Foren v. Rodick, 90 Me. 276, 283, 38 Atl. 175, 178, the court said:

"She [plaintiff] turned the knob, and the door readily yielded 'about the same as any door.' She says it was dark when she opened the door. There was nothing to suggest a 'yawning abyss.' The existing condition was not instantly manifest; but, suspecting no danger, she naturally stepped over the threshold simultaneously with the inward swing of the door. She was seeking to enter the building by the implied invitation of the defendants. She had a right to expect reasonable safety and convenience in the approaches. She was not required to use extraordinary precaution, but only such ordinary care and caution as persons of reasonable prudence, care, and discretion usually and ordinarily exercise under such circumstances."

In that case, it will be remembered, the plaintiff, instead of using the double door entrance, opened a single door and fell into the cellar. In the present case we are concerned with an elevator in a dwelling house, occupied by the defendant and her children. On the third floor the elevator was equipped with a gate inside the door, and, whatever may have been the reason for its installation, the material fact is that the gate was there, and that plaintiff knew it was there. Defendant stated on the stand that she had warned plaintiff "to keep the children away from the elevator on the third floor"; but it is not even suggested that any warning had been given as to the fourth floor, in the front part of which the children had playrooms. It would not have been a violent assumption, therefore, had plaintiff concluded that the elevator shaft had no opening on the fourth floor, if it projected beyond the third floor, or that any opening on the fourth floor was so situated and protected as to give defendant no concern even for her children.

It is suggested, on behalf of defendant, that plaintiff should have used the front stairway upon the occasion in question. The answer to this obviously is that the plaintiff, when informed by defendant that the butler, Hugh, might be in his room, which was in the back part of the fourth floor, naturally made use of the staircase leading directly to that part of the floor, and which she had seen used by the servants in going to and from their quarters. It is apparent from her testimony that her mind was occupied with the execution of the mission intrusted to her by her employer, and we think she had a right to suppose—especially in view of known conditions on the third floor and the failure of her employer to acquaint her with any unusual conditions on the fourth floor—that she would not be subjected to the dangers which awaited her and of which she had no warning. She was not rambling around, as has been suggested, but engaged in the performance of a duty intrusted to her by her employer, and when she found

the door to the shaft ajar, under the circumstances disclosed, we think she had no reason to assume that a step forward would result as it did.

Among the authorities relied upon by counsel for appellant is Steger v. Immen, 157 Mich. 494, 122 N. W. 104, 24 L. R. A. (N. S.) 246, where the plaintiff, during a visit to defendant's five-story apartment house building, borrowed a key from a tenant, and, finding an unlocked door in a relatively similar situation to that of a toilet on the floor below, without any investigation entered and fell down an open shaft. It was ruled that he was guilty of contributory negligence as matter of law. The plaintiff in that case was on a mission of his own, and the circumstances were somewhat different from those in the present case. There the plaintiff was looking for a place which he did not even know existed, and which as a matter of fact had no existence. Here the plaintiff, in a private dwelling, was proceeding to carry out the instructions of her employer, which took her to the very point where the accident occurred. In Hilsenbeck v. Guhring, 131 N. Y. 674, 30 N. E. 580, the plaintiff, the guest of a tenant, walked through a cellar door, across a platform, and fell downstairs. It was pointed out by the court that the head of the cellar stairs was "two or three steps" from the door, "so that it could not be claimed that the top of the stairs was so close up to the door that one in the exercise of ordinary care would be apt to fall down the stairs upon the door being opened, and before he would have a fair or reasonable opportunity to notice what was in front of him." Comment on this case is unnecessary, for the difference between it and the case at bar is apparent. Without reference to other cases cited in behalf of defendant, it may be observed that we have found nothing therein to dissuade us from adopting the principles laid down in the authorities already reviewed. If dangerous conditions are needlessly and carelessly maintained, and, as here, are the proximate cause of the injury complained of, those responsible therefor ought in common justice to respond in damages.

[5, 6] One point remains. It is based upon the contention that the court erred in permitting testimony and photographs to be introduced in evidence as to conditions surrounding the elevator opening on the third floor. Since both parties introduced evidence on this point, we think defendant is in no position to raise that question. But, however that may be, the evidence clearly was admissible on the question as to whether plaintiff was exercising due care and caution. Her knowledge of conditions existing on the third floor was material in this connection.

Finding no error in the record, we affirm the judgment, with costs. Affirmed.

VAN ORSDEL, Associate Justice (dissenting). This case has been disposed of by my Associates upon the theory of the relation between the parties of master and servant. We therefore start with plaintiff as a servant in the house of defendant. The mere fact that she had not before been called upon to ascend the rear stairs to the fourth floor does not affect the question as to the nature or scope of her duties. That she was performing her duties as a servant in the house

is the theory upon which the declaration is cast, and upon which my Associates have based their opinion. Accepting, therefore, the position assumed, plaintiff and Hugh were fellow servants.

The negligence of defendant is predicated upon the hypothesis that the dumb-waiter shaft was defectively constructed. There is a marked distinction between a factory or public building and a private dwelling house. In factories the duties of the employés are ordinarily confined to a particular part of the premises, and the building must be constructed for the protection of employés instructed to go into portions thereof with which they are not familiar. The same rule applies to public buildings, to which the public has more or less unrestrained access. They must be constructed and maintained with a view to the accommodation and safety of the members of the public, who usually have no knowledge of the existing conditions. On the other hand, a private dwelling house is constructed to suit the convenience of the owner or lessee. Elevators in charge of skilled operators and open and commodious stairways are an impossibility in ordinary construction. Stairways descending from open hallways and blind stairways accessible from doors leading from rooms or hallways are common—indeed, ordinary—features of construction. A private dwelling is not constructed with any view whatever to public convenience, and the public, as such, has no rights in the premises. Invited guests have access only to such parts of the house as are set apart for their use, and usually act under the escort or direction of some member of the household. Servants are members of the household, and it is their first duty to acquaint themselves with the house and any peculiarities pertaining to its construction.

As the degree of care required of the owner of a private dwelling is less than that required of the owner of a factory or public building, so the care required of a domestic servant is greater than that required of an employé in a factory or public building. Ordinarily the duties of the domestic servant are coextensive with the house itself. They extend, or may extend, to any or all parts of the house, both by day and by night. Hence the servant will be presumed to observe and understand all the peculiarities of construction in the house to the same degree as a prudent person of equal age and experience, with equal capacity for estimating their significance, under the same circumstances, would observe and understand them.

Before contributory negligence, as matter of law, can exist, it must consist of such an act as not only contributes to, but is the proximate cause of, the accident. It is not difficult to locate the proximate cause of the accident in this case. It consisted in the carelessness of plaintiff in opening the door and stepping into the shaft under conditions uncalled for from the nature of her mission. It is stated in the opinion that there is no evidence tending to show that plaintiff knew the location of the dumb-waiter in the fourth floor. She was familiar with its location and operation on the third floor, and must have known that it ascended and descended past that floor; that the shaft did not extend horizontally or at an angle, but vertically; and that it must, of necessity, occupy the same relation to the stairway on the fourth floor

as it did to the stairway on the third floor. It is also stated in the opinion that the record fails to disclose that plaintiff knew the dumbwaiter shaft extended to the fourth floor; but, on the other hand, it also fails to show that she had any reason to believe that it did not so extend, and she had no right to assume that it terminated at the third floor. Her knowledge of its existence at least should have suggested to her the probability of its continuation to the fourth floor, a fact which she was required to take into consideration and guard herself against when groping in the dark.

Nor can it be held that she was justified in assuming that, if the shaft did extend to the fourth floor, it was protected by a gate. True, a gate blocked the entrance to the shaft on the third floor; but she knew that this was for the protection of the children, and that none existed on the first and second floors. The existence, however, of a gate on the third floor and plaintiff's knowledge of it, has no bearing upon the question of her negligence. If she had gone to the fourth floor to use the dumb-waiter, and, relying upon a gate, had opened the door and fallen in, the existence of the gate on the third floor might have been important. But her mission to the fourth floor had nothing to do with the dumb-waiter. Whatever case plaintiff has must rest upon the hypothesis that when she opened the door she did not know she was entering the shaft; hence she was not relying upon the presence of a gate from her knowledge that there was one on the floor below.

Not only did the darkness call for the utmost care on her part, but there is no contention on the part of plaintiff, nor is there any evidence to support the assumption, that her orders from defendant, given the broadest possible interpretation, required her to open and pass through a door. It is upon this erroneous assumption that plaintiff's action in opening the door into the shaft is excused by my Associates. The opinion assumes that she thought she was opening the door into Hugh's room. Either this theory must be correct, or else she did something not contemplated in her mission—opening and passing through a door. But this presumption, upon which the opinion rests, that she mistook the shaft door for the door to Hugh's room, has absolutely no basis in fact. Nowhere in her testimony does she make any statement from which even a remote inference may be drawn, that she had any intention of opening Hugh's door, or any other door, or that her mission required it. She testified that she was calling Hugh, and the evidence clearly discloses that this was what she was requested by defendant to do. If she felt it her duty to go to Hugh's room in order to arouse him, propriety would seem to suggest, considering the hour of the night, that she do so by rapping on the door, instead of unceremoniously entering the room as she entered the shaft.

Twice in the opinion it is stated erroneously that the door was ajar. While plaintiff used the expression in her testimony, she evidently meant that it was not latched. Plaintiff testified:

"As I was feeling for the light, * * * my hand came on a door handle. I believe it was a knob, but am not sure. I did not have to turn the latch. It was ajar. I pulled it like that (illustrating), and it came quite easily, and I stepped forward."

The trial justice, who witnessed the illustration of plaintiff on the witness stand, stated to the jury in his charge:

"If the door was locked, the plaintiff cannot recover; if it was not, in fact, locked, but stood ajar, or stood as the plaintiff testified, so that upon a mere taking hold of the knob the door came open, then in so far as that point is concerned it is the case she has stated in the declaration."

In the declaration plaintiff alleges:

"Her hand came into contact with a doorknob upon a door standing slightly ajar, or only lightly fastened; she opened the door, taking one step forward," etc.

Plaintiff alleges she opened the door before stepping in. She so stated on the witness stand; the court so stated to the jury; the case was tried on that hypothesis in the court below, and in the briefs and arguments of counsel in this court. Therefore the most that can be fairly adduced from the record is that the door was closed, but not latched.

Thus we have the case stated in the most favorable light for plaintiff; that she was sent into the back part of the hall to call Hugh, not to blunder around in the dark, or to open doors and enter unknown chambers, closets, or dumb-waiter shafts. No clearer case of deliberate, reckless, heedless, contributory negligence was ever presented to a court.

But was the shaft, in fact, defective construction in a private dwelling? Certainly not, if the door is kept closed and locked. Let us assume, to meet the theory of negligence advanced by the court in this case, that a gate had been provided inside the door. Then, whether the door is locked, merely closed, unlatched, or open, the gate furnished absolute protection—approved construction. But suppose a servant, in disobedience of the master's express instruction, removes the gate, and neglects to restore it, and another servant comes along in the dark, unfamiliar with conditions, opens the door, steps in, and is injured. What becomes of the theory of defective construction? In that case the gate, when in place, furnished a perfect barrier. In the present case the door, when kept locked, as required by the master, formed a complete barrier. In both cases the dangerous condition was due, not to this or that style of construction, but to the negligence of the fellow servant.

This is not the case of a dangerous contrivance left unguarded. Plaintiff did not stumble or fall into an open shaft. The door was closed. To make the situation dangerous, she was required to do an affirmative act—open the door; an act not contemplated in the order of defendant, or even remotely related to the mission upon which she had been sent. The request of defendant certainly did not contemplate the entry of plaintiff into Hugh's sleeping apartment at the midnight hour.

It therefore logically follows that, so long as the door to the shaft was closed, a perfectly safe place was afforded plaintiff in which to perform her mission. Until she opened the door, the hall was safe. The duty of the master to furnish a safe place only requires that it be

safe for the performance by the servant of the particular duty assigned. Each case must rest upon its own facts. We are without authority, as a court, to judicially legislate upon the general subject of dwelling house architecture in the District of Columbia, with the view of preventing every possible accident which might occur as the result of this or that particular style of construction.

Counsel for plaintiff in their brief suggest that no case has been found analogous to this. The reason is apparent. They might have gone further, and truthfully stated that no case has been found where a servant in a private house has attempted to recover damages for injuries sustained from alleged defects in construction. Servants in private houses from time immemorial have been falling down stairs, through hatchways, and over obstacles left by the negligence of fellow servants; but no one prior to this, owing to the peculiar relation, seems to have conceived the notion that such an action for damages would lie.

The door is the usual instrument for inclosing passageways in private dwellings, and, whether locked, latched, or unlatched, it is notice to all to use their senses in opening it and passing through. And this is the rule of the cases. In Steger v. Immen, 157 Mich 494, 122 N. W. 104, 24 L. R. A. (N. S.) 246, the accident occurred in an apartment building, a collection of private dwellings, where a guest in one of the apartments was furnished a key to the toilet. He mistook the location of the toilet, opened a door, as in this case, stepped into a dumbwaiter shaft, and was injured. No question of defective construction seems to have been involved in the case. At least, it was regarded as unworthy of consideration by the court. The plaintiff was held to be guilty of contributory negligence as matter of law. In that case plaintiff was given a key and sent on a mission which required the opening of a door, while plaintiff's mission did not. If, in these cases, the negligence of the defendants is traceable to defective construction, the plaintiff in the Michigan case had a much stronger case than the plaintiff in the present case, since his mission required him to open and pass through a door in a semi-public building.

In Gaffney v. Brown, 150 Mass. 479, 23 N. E. 233, the plaintiff was accustomed to get her dinners at a house, on the ground floor of which the dining room was conducted. She came there as a boarder. When she started to leave the dining room, she went to a door which she assumed was the exit door. She opened the door, stepped in, and was precipitated down a stairway to the cellar. It was held to be contributory negligence as matter of law.

In Clark v. Fehlhaber, 106 Va. 803, 56 S. E. 817, 13 L. R. A. (N. S.) 442, the plaintiff, a dressmaker, was summoned to the house of defendant. She entered the rear vestibule, and, not knowing which one of several doors to enter, knocked on one of them, and defendant called to come in. Plaintiff opened the door, entered, and fell down a flight of stairs into the cellar. The court held that the accident was merely the result of misapprehension on the part of both parties. Plaintiff thought she was knocking on the entrance door, and defendant thought she was knocking on the right door. Both innocently con-

tributed to the accident, and there could be no recovery. There was no intimation of defective construction.

In Hilsenbeck v. Guhring, 131 N. Y. 674, 30 N. E. 580, plaintiff went to a house in which his son-in-law lived as a tenant. Late in the afternoon he went to a water-closet, which opened on the hall on the first floor, not knowing its exact location. By the reflection of a dim light he saw a door slightly open, and, supposing it to be the right door, stepped in upon a platform, from which he fell into a cellar, breaking his leg. Disposing of the case, the court, in part, said:

"We cannot see there was any obligation on the part of the defendant to keep the hallway lighted, or to keep the cellar door locked, at the peril of becoming responsible for an accident such as has happened in this case. We are of the opinion that the evidence fails to disclose the lack of reasonable care on the defendant's part in the attention given to these doors or to the lighting of the hallway. * * * Again, on the plaintiff's part, he was clearly guilty of negligence contributing to the injury. He says it was dark, and after he got hold of the door in question it was so dark he could not see into the space in front of him. He had never been there before, and he had no information which might mislead him, or cause him to think there was but one, and that the door into the closet. He knew nothing about it, and in that state of ignorance he opens a door which he thought was the one leading to the closet; but, it being dark, he could not be certain, and, notwithstanding the darkness, he walks ahead, and, while supposing himself in the closet, steps to the head of the stairway, and falls down the cellar stairs. In such case, and in the darkness, he should not have proceeded in a perfectly strange place without a light, or in some way taking precautions which would have enabled him to proceed in safety, * * * and hence, if one do come to a door in a hallway under such circumstances as this case shows, he cannot walk through it in darkness and claim damages for the resulting injury."

Other cases may be cited where persons, through mistake, have fallen into private stairways, hatches, or shafts. Campbell v. Abbott, 176 Mass. 246, 57 N. E. 462; Massey v. Seller, 45 Or. 267, 77 Pac. 397; Kaiser v. Hirth, 46 How. Prac. (N. Y.) 161. In no case has defective construction been intimated as ground of negligence. These cases sufficiently emphasize the distinction between private and public places, and answer the cases cited by the court where the accident occurred through mistaking the wrong doorways leading into and about public buildings. The cases relied upon in the opinion of the court all relate to accidents in public buildings. In all but one case the injured party was a stranger to the premises, and in each instance the mission of the injured party directly contemplated passage through a door.

In the present case plaintiff, though a servant in the house, was not a slave. She was not compelled to obey the indefinite request of defendant. She could have refused to ascend the stairs until they were lighted. She must have known of the custom that the light was kept burning until the last servant retired. She saw the servants ascending and descending the stairs. She was constantly around and about the foot of the stairs, and was familiar with conditions. Defendant also had a right to assume that the light was on, since the house throughout was lighted, indicating that the servants had not all retired.

Some responsibility must be attached to plaintiff's plunging into the dark without knowing the conditions ahead. But, as I have suggested,

the way was safe for her mission. It required an affirmative act on her part, not related to her mission, to create the danger.

The motion for a directed verdict should have been sustained.