255 F.2d 780
 Rosalie SPEARS, Administratrix of the estate of Leo Spears,
deceased, Plaintiff-Appellee,*
v.
ATCHISON, TOPEKA and SANTA FE RAILWAY CO., a corporation,
Defendant-Appellant.
*During the pendency of this appeal, plaintiff-appellee, Leo
Spears died and Rosalie Spars was appointed administratrix
of his estate. She was accordingly substituted for him here.
No contention is made that Spears' death in any way affects
the merits of this appeal.
We shall refer to him hereinafter as 'Spears'.
 No. 12205.
 United States Court of Appeals Seventh Circuit.
 May 27, 1958.
Rehearing Denied June 25, 1958.
 
 Harlan L. Hackbert, Chicago, Ill., Floyd J. Stuppi, John J. Schmidt, Chicago, Ill., for appellant, Stevenson, Conaghan, Velde & Hackbert, Chicago, Ill., of counsel.
 Joseph Barbera, Chicago, Ill., for appellee.
 Before FINNEGAN, SCHNACKENBERG and HASTINGS, Circuit Judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 Defendant appeals from a judgment in favor of Spears, on a verdict in an action under the Federal Employers' Liability Act.[1] The errors relied upon arise out of the failure of the court to grant defendant's motions for a directed verdict or for judgment notwithstanding the verdict.
 
 
 2
 The following statement of facts is supported by evidence.
 
 
 3
 Spears, a diabetic, was employed by defendant as a diesel shop laborer. His duties included cleaning the area around a wheel-turning lathe, and keeping said area free from metal shavings, as well as cleaning with oil and preparing train wheel assemblies for turning on said lathe. The floor where Spears worked was oily and greasy from diesel fuel oils and, on occasion, there was oil on his shoes. Spears asked his foreman for rubber boots in May, 1946, when he started to work, and also about a year later, and he was told that they were not necessary. In the fall of 1950, defendant posted a notice to employees which called attention to the fact that petroleum and some of its products, including diesel fuel and fuel oils, have a solvent and defatting action upon the skin, and that if, through prolonged exposure, too much of the natural protective oil (sebum) of the skin is removed by petroleum products, by soap and dishwater, or by any other solvent, it will leave the skin reddened, cracked and subject to infection, a condition known as 'dermatitis.' Dr. Louis Schwartz, a witness for defendant, under cross-examination, stated that the use of a special type of rubber boots by a worker around oil or diesel fuel was a way of preventing contact of the oil on the skin.
 
 
 4
 Spears entered the Cook County hospital (in Chicago) July 22, 1953, and was there seen by Kr. Leonard Cardon, who testified that he found infection of both feet with an area of necrosis between the toes, with very good pulsations in the arteries of the foot. Dr. Cardon testified that Spears' infection ws not diabetic gangrene. His diagnosis was 'cellulitis of the feet with necrosis in a diabetic patient.' Cellulitis is a more diffuse infection of the skin and deeper tissues than dermatitis. He recommended medication and debridement of the dead or necrotic tissues, diet and insulin to control the diabetes, support of the right heel (his note reads 'because of impending gangrene of heel,') and medication for the infection. In answer of a hypothetical question, Dr. Cardon testified:
 
 
 5
 'there might very well have been a causal connection between the partient's chronic exposure to the oil and his state of disability when he was admitted to the County Hospital. * * * The reasons are as follows: The chronic exposure of the feet to the oil might or apparently did macerate, cause maceration, of the feet, wrinkling and piling up of what we call the epithelial layer of skin, and cracking, so that it would make the feet more susceptible to the entrance of infecting germs to produce an infection of the type which he had.'
 
 
 6
 During September and October 1953, Spears' legs were amputated at the midthighs. He was then a patient in a hospital at Topeka, Kansas, from which he was discharged on November 14, 1953 and returned to Chicago.
 
 
 7
 Dr. Samuel Governale, who examined Spears a few days before the trial, testified, in response to a hypothetical question, and over the objection of defendant's counsel, that he believed
 
 
 8
 'that there was a relationship between the exposure * * * to the petroleum substances and the final termination of, first, the ill-being of his lower extremities, the feet, and finally with a bilateral amputation of the thighs.'
 
 
 9
 He then stated the reasons for his opinion.
 
 
 10
 Dr. Louis Schwartz was asked by defendant's counsel on direct examination, by means of a hypothetical question, to state his opinion as to whether there was any causal relationship between the conditions under which Spears worked and any exposure to or contact with diesel fuel oil on his feet and the eventual amputation of both his legs. He answered that his opinion was that the contact 'had no effect whatsoever upon the amputation of his legs.'
 
 
 11
 Defendant contends, first, that there was no evidence of employer negligence, and, secondly, that 'the proximate cause of the amputation of plaintiff's legs was diabetic gangrene, not any infection of external origin through an oil-contact caused skin infection.'
 
 
 12
 1. In addition to the facts which we have stated, other facts in the records cumulatively support the conclusion which we reach. The evidence taken as a whole justifies with reason the conclusion that defendant's negligence played a part in producing the injury for which damages were sought by plaintiff and that, therefore, the action of the district court in overruling defendant's motions for a directed verdict and judgment notwithstanding the verdict was not erroneous. Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493; Krienke v. Illinois Central Railway Co., 7 Cir., 249 F.2d 840, 844.
 
 
 13
 2. To answer defendant's second contention, plaintiff relies, inter alia, on the testimony of Doctors Cardon and Governale, to which we have referred. In effect, each testified, in answer to a hypothetical question, that in his opinion there was a causal relationship between Spears' working conditions and his injuries, and each gave his reasons for his opinion. Defendant argues that this testimony is incompetent as a matter of law.[2] Plaintiff denies this and both sides assume that the law of Illinois governs.
 
 
 14
 If Illinois law governs in determining whether these expert medical witnesses should have been permitted, over defendant's objection, to state their opinions (in effect) that there was a causal relation between the acts set forth in the hypothetical questions and Spears' condition of ill-being which resulted in the eventual amputation of his legs, we are confronted with the rule laid down in the Kimbrough case (Fellows-Kimbrough v. Chicago City Ry. Co., 272 Ill. 71, 111 N.E. 499, 502), and uniformly followed by Illinois courts. The Kimbrough rule is that such an expert witness may be asked, 'whether or not a given condition or malady of a person may or could result from and be caused by the facts stated in the hypothetical question; butg he should not be asked whether or not such facts did cause and bring about such condition or malady.' The reasoning of the court in the Kimbrough case is that it is not competent for witnesses, even though testifying as experts, to give their opinions on the very fact the jury is to determine, that such a question calls for an opinion on an ultimate fact, and therefore invades the province of the jury.
 
 
 15
 The Kimbrough rule has long been a source of confusion to judges and trial lawyers in Illinois. It is difficult to justify its application to a case such as the one at bar, where different medical doctors testified as experts for both parties respectively and where they gave to the jury their reasons for their opinions. The Kimbrough rule would prevent them from expressing an opinion that a causal relationship existed between the stated facts and Spears' disability. If such a clear opinion from each side were permitted, although each party's doctor would have been contradicting the other's, the jury would have been assisted, in resolving the contradiction, by a resort to the reasons given and the other evidence in the case. Instead of that, the Kimbrough rule would place before the jury conflicting opinions only on the question of whether there might or could have been a causal relationship. The form required for these opinions renders them speculative and inconclusive and destroys their value as an aid to the jury. To tell lay jurors that certain facts might or could have caused a certain result amounts to an invitation to them to guess as to whether they did cause that result. Not only does the restraint imposed by the Kimbrough rule prevent 'an invasion of the province of the jury'; it actually leaves the jury floundering in uncertainty and renders it likely to find, or reject a finding, of a causal relationship upon grounds without basis in the evidence. On the other hand, if the relevant facts are proved by evidence and called to the attention of the experts who are then permitted to state their opinions as to causation as well as the reasons therefor, the jury can intelligently decide between the conflicting opinions on causation in the light of the evidence of those facts. The jury's determination of which opinion is right is clearly within its function as the trier of the facts.
 
 
 16
 It is evident that the Kimbrough rule is unrealistic in its application and is based upon a strained theoretical premise.[3] Whether or not it is binding upon the federal courts sitting in Illinois is also not clear. Rule 43(a) of the Federal Rules of Civil Procedure,[4] in its pertinent part reads:
 
 
 17
 '* * * All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs. * * *.'[5]
 
 
 18
 While it has been said that the primary purpose of this rule is the removal of uncertainty concerning the source of the federal law of evidence, this purpose has been only partially accomplished. The criticism of and doubts about this rule have been freely and many times expressed. Some of them are cited in the annotation to said rule. 28 U.S.C.A., rule 43.
 
 
 19
 3. Fortunately our immediate problem in connection therewith, becomes readily solved by the trial record before us. While it is true that defendant objected to the form of the hypothetical questions put to Dr. Governale and Dr. Cardon and the expression of their opinions as to causation, it is further true that, when the defendant was putting in its defense, it elicited on direct examination of Dr. Schwartz, by a hypothetical question, his opinions as to causation. He testified that his opinion was that contact with the diesel fuel oil had no effect whatsoever upon the amputation of Spears' legs. If the expression of opinions by plaintiff's witnesses invaded the province of the jury, to the prejudice of defendant, it is equally true that the expression of Dr. Schwartz' opinion invaded the province of the jury to the prejudice of plaintiff. In this court defendant is not in a position to complain of alleged error in respect to the examination of Doctors Governale and Cardon where it caused the trial court to commit a similar alleged error in connection with the testimony of Dr. Schwartz. A party cannot complain of the form of questions asked witnesses of the adverse party, where the questions asked his own witnesses were of the same nature. 5 C.J.S. Appeal & Error, 1506, pp. 909, 911. Knowing the trial court's attitude toward testimony by Spears' experts of their opinions in regard to causation, defendant chose to put to its own expert a question in conformity with that attitude of the court. In so doing, it got the benefit of its expert's opinion. It cannot blow hot and cold. By submitting to its own expert a question in the form which the court, over defendant's objection, had already ruled proper, it acquiesced in the court's ruling and cannot now be heard to complain.
 
 
 20
 This principle was recognized in Netcher v. Bernstein, 110 Ill.App. 484, which was a personal injury case involving the testimony of doctors on the question of the relation existing between the injuries received and subsequent conditions. To a hypothetical question put to a doctor testifying for plaintiff, defendant's counsel had objected. The question put concluded: 'Now, Doctor, on that hypothesis, can you state * * * what, if any, relation existed between the injuries received and those conditions which followed?' The court, at page 488, said:'Any objection made to this question, either of form or of substance, was waived by the subsequent conduct of appellants.[6] Dr. H. N. Moyer was called by them as an expert witness. In his examination they asked him:
 
 
 21
 'Q. Now you heard the hypothetical question which was put this morning, * * *? A. Yes, I heard it read.
 
 
 22
 'Q. Do you recall it well enough so that you can give us an opinion upon it? A. Yes, i think I have reasonably good recollection of it.'
 
 
 23
 'Thereupon, in a response to a further question, the doctor gave his opinion based upon the supposed facts contained in that hypothetical question. The same course was pursued in the examination in chief of Dr. Leaming, an expert witness called by appellants.
 
 
 24
 'It does not require the citation of authorities to establish the proposition that appellants, having adopted and used this identical hypothetical question in the examination of their expert witnesses, will not be heard to say in this court that its use by appellee[7] was reversible error.'
 
 
 25
 In Chesapeake & Ohio R. Co. v. Lushbaugh, 6 Cir., 17 F.2d 986, at page 987, the court said:
 
 
 26
 'The assignments dealing with the admission of testimony ar also without merit. Evidence of other rocks falling on the track was objected to upon the theory that it was not shown that they fell from the adjacent cliff. That deficiency was later supplied. If the evidence was of doubtful admissibility, defendant is not in position to complain, because it offered evidence of the same character and also requested instructions upon the assumption that it was properly admitted.'
 
 
 27
 To the same effect is Union Trust Co. of Cleveland, Ohio v. Woodrow Mfg. Co., 8 Cir., 63 F.2d 602, 607. In Gibson v. Gernat, 50 App.D.C. 3, 267 F. 305, 311, certiorari denied, 253 U.S. 487, 40 S.Ct. 483, 64 L.Ed. 1026, the court said:
 
 
 28
 'One point remains. It is based upon the contention that the court erred in permitting testimony and photographs to be introduced in evidence as to conditions surrounding the elevator opening on the third floor. Since both parties introduced evidence on this point, we think defendant is in no position to raise that question. * * *'
 
 
 29
 For the reasons herein stated, the judgment of the district court is affirmed.
 
 
 30
 Affirmed.
 
 
 31
 FINNEGAN, Circuit Judge, concurs in the result.
 
 
 
 [1]
 45 U.S.C.A. 51
 
 
 [2]
 Defendant made no motion for a new trial in the district court and it is probable that it has no right to argue the incompetency, admissibility, or weight of the testimony of witnesses on its motions for a directed verdict or for judgment notwithstanding the verdict. 88 C.J.S. Trial 252, p. 596. However, plaintiff's counsel has raised no objection to our considering these matters and we accordingly do so
 
 
 [3]
 The essence of a rule such as Kimbrough, has been rejected in the federal courts. Francis v. Southern Pac. Co., 10 Cir., 162 F.2d 813, 817(7); Detroit, T. & I.R. Co. v. Banning, 6 Cir., 173 F.2d 752, 756(9); New York Life Ins. Co. v. Doerksen, 10 Cir., 64 F.2d 240, 241(2, 3)
 The distinction between 'may have' and 'did' in questions propounded to experts, such as in the case at bar, has been rejected by various state courts, including cluding the Missouri Supreme Court in O'Leary v. Scullin Steel Co., 303 Mo. 363, 260 S.W. 55, in a case where the question was whether plaintiff's diseased condition of a bone resulted from a boil or from an injury to the thumb and it was held proper to admit testimony that the injury to the thumb caused infection and disease of the bone. The court said, at 260 S.W. 58:
 'The rule (distinguishing between 'may have' and 'did') laid down in the cases considered in the preceding paragraph is not sound. The usual formula used by counsel and court in invoking and applying the rule is that to permit an expert witness to say that a condition of which there is evidence was caused by happenings of which there is evidence, and which are hypothesized in the question put to him, is to 'invade the province of the jury.' * * * The jury's duty to decide that question could not be 'usurped' literally by a witness nor its 'province invaded actually.' The witness would remain a witness and the jury would remain the jury. 4 Wigmore on Evidence, 1920, 1921. * * * With respect to the question in this case there is no reason to exclude the expert's opinion as to the cause of the bone infection. No layman could tell from the evidence (other than that of the experts) whether the thumb injury or the boil caused that infection. The only evidence which, to the lay mind in the jury box, could be said to have any efficacy, to point to one rather than the other as the cause of the infection, is that of experts. In this situation our law steps in, and by the rule of the preceding paragraph directly forbids the expert to say more than that the wound or the boil, or both, 'might or could' cause the infection of the bone. The jury is then in this situation: It has before it no evidence on which it can form an independent opinion as to the cause; it has expert testimony that the injury to the thumb 'might or could' cause the bone infection; it has before it other expert testimony that the boil 'might or could' cause it; it has, in this case, other testimony that many other things might or could cause it; it has no testimony that either the wound or boil, or anything else, did cause it. The burden is on plaintiff. The jury might well reflect:
 "To our minds, untrained in the physician's field, the evidence does not show the cause; the experts do not tell the cause; that a thing 'might or could' be true is far short of evidence that it is more probable than some other explanation; it is plaintiff's duty to prove his case by a preponderance of the evidence; all he has proved is that the injury he says he received 'might or could' have caused this trouble with his arm; he has not, therefore, made out his proof on this point, and as to it we must find against him.'
 'In this case the infected bone is practically the whole case as far as recoverable damages are concerned. It is not surprising to find that the rule has been criticized by courts and text-writers. If it is true that an opinion like that given in this case is erroneously received because it is an opinion 'upon the question the jury is to decide,' then every opinion in every case is incompetent for that reason, or it is immaterial. Unless the opinion of the expert aids the jury in its labors, it is of no value, and for that reason is not admissible; and, if it does not aid them, it is solely because it in some way points to the truth on the issue before them. If he points to the truth but partially, that will not save it from the rule, unles the court will hold that a 'reasonable' 'invasion of the province of the jury' can be tolerated. * * *'
 
 
 [4]
 28 U.S.C.A. Rule 43(a)
 
 
 [5]
 In People Gas Co. of Kentucky v. Fitzgerald, 6 Cir., 188 F.2d 198, at page 201, where expert witnesses had testified as to the actual cause of an explosion, the court said (7):
 'This court has stated that the general rule permits a witness experienced in technical matters and qualified to do so to give his opinion in a matter which is not one of common knowledge, although it involves an ultimate fact to be finally decided by the jury. * * *
 'Though the Kentucky rule may be otherwise, the federal rule is to be followed, because it is most favorable to the reception of the evidence. * * *'
 
 
 [6]
 Defendant
 
 
 [7]
 Plaintiff